## Lewis, Wilson & Hicks v. Durham.

(Decided October 6, 1911.)

## Appeal from Rockcastle Circuit Court.

1. Verdict Against the Evidence.—Where the verdict of a properly instructed jury is flagrantly against the weight of the evidence, it will be set aside for that reason.

2. Evidence—Surveyor's Plat.—The plat is a necessary part of the surveyor's report required by law, and it is therefore proper evidence in ascertaining the position of the land described in the patent, and what is included within its boundary.

3. Boundary—Locating Survey.—In locating a survey all the proof as to the marked lines and corners, the original location of the patent as shown by the original survey and plat, and the quantity of land called for, should be taken into consideration. Course and distance must give way to marked and established lines or corners found on the ground, and the quantity called for is entitled to less weight as evidence than course and distance; but, in determining the proper location of a patent, all the evidence should be considered.

JOHN W. BROWN and J. W. ALCORN for appellants.

L. W. BETHURUM for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

The appellee, Durham, sued the appellants, Lewis, Wilson & Hicks, in the Rockcastle Circuit Court to recover damages for their unlawful and forcible entry upon 21 acres of land on the waters of Brush creek, which Durham claimed to own, and taking therefrom 786 saw-logs of the alleged value of $1,318. The appellants answered, denying the ownership of Durham, and set up ownership of the land in themselves.

Appellants claim under a patent issued to Elisha Parsons in 1850 for 100 acres of land, bounded as follows:

"Beginning at two chestnuts and two pines standing about two and a half poles southeastwardly from the ridge road and a short distance above the Green Pond and being a corner to a survey of 100 acres in the name of John J. Haley, thence S. 35 W. 27 poles to a maple, black oak and white oak, thence N. 25 E. 20 poles to a chestnut and chestnut oak, thence N. 65 E. 44 poles to a pine and chestnut oak, thence S. 85 E. 60 poles to a double gum, thence N. 45 E. 20 poles to a black oak,

thence N. 35 poles to a white oak, thence E. 56 poles to two white oaks and gum, thence S. 15 W. 190 poles (line not marked) to a white oak, thence N. 55 W. 135 poles to the beginning.''

The appellee claims under a patent issued in 1909 to Durham and Smith for 21 acres described by metes and bounds. It is insisted by appellants that the first call of the Parsons survey—''S. 35 W.''—is erroneous, and should read ''N. 35 W.;'' and it is perfectly apparent from the evidence that if this first call is made to read ''N. 35 W.,'' the Parsons survey of 1850 for 100 acres will include within its boundary the appellee's 21 acres patented in 1909. The question for determination, therefore, was the location of the boundary of the Parsons survey. The jury found that there was no mistake in the first call; and that the Durham & Smith patent of 1909 was, therefore, not included within the Parsons survey; and, by a verdict of nine of the jurors, they awarded the appellee $300 in damages. From a judgment upon that verdict the defendants prosecute this appeal.

As grounds for a reversal appellants insist (1), that the verdict of the jury is not sustained by the evidence; and, (2), that the court erred in giving and refusing instructions.

1. The two principal witnesses as to the location of the boundary of the Parsons survey were Wilson, a surveyor who was introduced by the appellee, and Davis, a surveyor who was called by appellants. The first call of Parsons' survey in the certificate and in the patent reads, ''S. 35 W. 27 poles;'' but the original plat filed with the Register of the Land Office along with and as a part of the original survey, and introduced in evidence, plainly shows that this first call should read ''N. 35 W. 27 poles;'' and Wilson, who testified for appellee, admits, in effect, that if this alleged error was corrected, and the first call made to read ''N. 35 W.,'' instead of ''S. 35 W.,'' that the Parsons boundary would include all the land claimed by the appellee. In making his first survey of the Parsons boundary, Wilson used a copy of a certificate of survey that had at least two other errors in it, one as to a course, and the other as to a distance; and in making his plat by running the first course S. 35 W., he produces an anomalous figure of a survey showing two separate tracts with the lines crossing each

other several times. By continuing to follow the description as written, the second and third calls were so run and platted as to include the beginning corner entirely within the survey, thus showing that the survey was erroneous. Davis, the surveyor introduced by appellants, surveyed the Parsons tract in June, 1910. He testified that when he went to make the survey he found there was an error in the first call, in that it read "southwest" when it should have run "northwest;" that when he had corrected that call, he ran around the boundary without any trouble, and that the calls carried him to the various monuments called for in the original survey; that he found marked line trees between the corners, and that the corners and the line trees were sufficiently marked to be identified. With the first call thus corrected, he testified that he had no difficulty whatever in making the survey, and that by reversing the calls it was plain that the correction should be made in order for the survey to properly close. Wilson and Davis were the only surveyors who testified. There was quite a good deal of other testimony, however, which related to conversations and acts of the different parties with regard to the location of the boundary; but this testimony is of inferior dignity and quality to that of the surveyors. It appears, however, that before Durham & Smith made their survey in 1909 preparatory to taking out their patent, they were personally notified by the appellants and their vendor Stewart, that the appellants then owned the land, and that they forbade the appellee from having the land surveyed.

While we fully recognize the rule so often announced by this court, that we will not disturb the verdict of a properly instructed jury, unless it is flagrantly against the weight of the evidence, we cannot avoid the conclusion that the verdict in this case comes within the exception, and is flagrantly against the weight of the evidence. There was no theory of the case presented by the appellee which reasonably justified the jury in finding that the boundary of the Parsons survey did not include appellee's subsequent 21 acre patent. On the contrary, the ordinary rules of law which have been so often applied by this court as to have become definitely settled rules of evidence, show beyond question, when applied to the facts in this case, that the first course of the Parsons survey should read "N. 35 W.," and not "S. 35 W." We, therefore, feel constrained to hold that the judgment and

verdict in this case should be set aside for the reason that they are flagrantly against the weight of the evidence.

2. Those instructions given by the court, which re- lated to the location of the boundary, are numbered 1 and 2, and read as follows:

"(1) You will find for the plaintiff unless you shall believe from the evidence that the land described in the petition is included in the description of the boundary of land set out in the patent issued to Elisha Parsons, or the Jesse Fish survey and plat upon which said patent was issued, and if you so believe you will find for the defendant."

"(2) If you believe from the evidence that in making out his certificate of the survey of Elisha Parsons, the County Surveyor by mistake wrote as the call of the first course 'was south 35 west, when, in fact, the call of the first course was N. 35 west,' and if you further believe from the evidence, with that mistake corrected, the land from which the timber in controversy, is within the boundary which was surveyed for Parsons, you should find for the defendant."

The other instructions related to the measure of damages, and the finding of a verdict by a majority of the jury, and no objection is taken to either of them. The appellants, however, asked but the court refused to give, instructions A and B, which read as follows:

"A. If you believe from the evidence that the plat filed by the County Surveyor, Jesse Fish, with the origi- nal survey reported by him to the Land Office at Frank- fort, shows that said surveyor by mistake wrote the first course of the survey as South 35 West, when it was, in fact, North 35 West, you should find for the defendant."

"B. By the word 'description' as used in instruction 1, is meant the description as contained in the certificate of survey, in the plat and in the patent, and if you be- lieve from the evidence that there was a mistake in any one or more of the calls in the certificate of survey or in the patent, and if you further believe from the evidence that the plat shows what was the correct boundary of the survey, you should find that boundary to be correct which is shown by the plat as the boundary."

Instructions A and B are subject to the criticism that they place too much weight upon the plat of the survey, when compared with the weight to be given the sur- veyor's description and the description in the patent.

On the other hand, the instructions given by the court are subject to the criticism that they fail to give any weight to the plat, and leave the jury to fix the location of the boundary, without any rules by which it is to be guided in considering the conflicting testimony of the witnesses concerning the proper methods of making the survey, except the existence of the mistake in the first course which was presented in the second instruction. There was no rule given, however, by which the jury was to determine whether there was a mistake in the description. In land surveying there are well established rules for correcting erroneous courses and finding lost corners, analogous, for instance, to the rules for measuring damages. In either case the court applies the legal rules to asserted facts, leaving it to the jury to determine the facts. To leave the jury to follow its own notion of what should be done to correctly locate a disputed boundary without giving it the legal rules applicable under the facts, would be like authorizing the jury to fix damages in the case of a breach of contract, without telling them what was the legal measure of damages.

The decision in the case at bar depended upon the course of the first call of the Parsons patent; and to sustain their contention that it should run "N. 35 W." instead of "S. 35 W.," appellants offered the surveyor's original plat in evidence, and unsuccessfully asked the court to give an instruction as to its legal effect. It would be strange indeed if, in view of the history of our early settlement, the law of Kentucky did not have a rule of procedure in such a case.

In speaking on "Progress and Jurisprudence" in 1821, Mr. Justice Story said:

"The system of land titles in Kentucky is, indeed, one of the most abstruse branches of local jurisprudence, built upon artificial principles, singularly acute and metaphysical and quite as curious and intricate as some of the higher doctrines of contingent remainders and executory devises. It affords an illustrious example of human infirmity in the legislative supposition, that the great statute on which it rests, was so certain as in a great measure to preclude future litigation; of human ingenuity, in overcoming obstacles apparently insurmountable, by devising approximations to certainty in descriptions strangely vague and inaccurate, thus preserving the legislative intention, and yet promoting the

great purposes of justice. The statute to which I have alluded, required, that the description in the original entry should be so certain, that other purchasers might be able to appropriate the adjacent residuum. The description of the tract might fail in two particulars. 1. It might be bounded by known objects or boundaries, but yet so general and imperfect, that the description might equally well suit different tracts of land, and thus, want what has been technically called 'identity.' 2. Or the boundaries might refer to objects so universal as to defy all certainty, or to objects not generally known at the time by the particular names given to them, or known generally by another name; and then the description would be fatally defective for want of what is technically called 'notoriety.' Time would fail me to enumerate the doctrines which have started from this origin, or to go over other peculiarities of the system. Perhaps human genius has been rarely more severely tasked, or more fairly rewarded, then in its labors on this occasion. The land law of Kentucky, while it stands alone in its subtle and refined distinctions, has attained a symmetry which at this moment enables it to be studied almost with scientific precision. And, so little assistance can be gained from the lights of the common law for its comprehension, that, to lawyers of other States, it will forever remain an unknown code with a peculiar dialect, to be explored and studied like the jurisprudence of some foreign nation." (Miscellaneous Writings, 219.)

The trouble in the case at bar is by no means a new one; frequently has it been met and solved by the courts of Kentucky.

There can be no doubt, under the authorities, that weight must be given to the plat in determining the location of a disputed boundary. In Alexander v. Lively, 5 T. B. M., 161, Judge Mills said:

"The calls of the patent and certificate alone go far, when all the calls are taken together, to point out what and where the mistake is, that is, that the surveyor omitted an entire line. But we are not left to decide the case here. For when the plat is inspected it exhibits to the eye at once, a figure, precisely corresponding with the one which we have constructed by inserting the omitted line, and, indeed, exhibits the third line itself, which was the one omitted.

"The plat is a necessary part of the surveyor's re-

port required by law, and is, therefore, proper evidence. in ascertaining the position of the land and what is included, and must settle the figure in this case, and prove the mistake."

And, as to the order in which the lines are run, we used the following language in Pearson v. Baker, 4 Dana, 324:

"The order in which the surveyor gives the lines and corners in his certificate of survey, is of no importance to find the true position of the survey. Reversing the courses is as lawful and persuasive as following the order of the certificate."

Again, in Mercer v. Bate, 4 J. J. Mar., 339, Chief Justice Robertson re-affirmed the rule in the following language:

"The official acts of the surveyor are to be accredited. The court must presume that he did his duty, and that his report is accurate, the more especially, as there is nothing which can tend to even a suspicion that there was any mistake or fraud. The original plat is not only admissible as evidence, but it is intrinsically one of the most potent facts which can be adduced; and hence it has been often admitted by this court as always either preponderating or alone conclusive."

Patrick v. Spradling, 19 Ky. Law Rep., 1039; Hagins v. Whittaker, 19 Ky. Law Rep., 1051; and Bell County L. & C. Co. v. Hendrickson, 24 Ky. Law Rep., 372, are to the same effect; and in Hogg v. Lusk, 120 Ky., 419, the authorities are given and reviewed at length. See also Bryant v. Kendall, 25 Ky. Law Rep., 1861, and Steele's Heirs v. Taylor, 3 A. K. M., 226. And in the late case of Finley v. Meadows, 134 Ky., 76, this court said:

"In locating a survey all the proof as to the marked lines and corners, the original location of the patent as shown by the original survey and plot, and the quantity of land called for, should be taken into consideration. Course and distance must give way to marked and established lines or corners found on the ground, and the quantity called for is entitled to less weight as evidence than course and distance; but in determining the proper location of a patent all the evidence should be considered by the court, for the object in the end is to ascertain how the survey was in fact located."

While the instruction offered by appellants was not technically correct, for the reasons above given, yet it

was the duty of the court, when it refused the instruction, to prepare and give a proper instruction upon that point. L. & N. R. R. Co. v. Harrod, 115 Ky., 877; L. & N. R. R. Co. v. King's Admr., 131 Ky., 356; and Beaver v. Bowen, 29 Ky. Law Rep., 526.

We think, however, under the evidence in this case, that the circuit judge should have sustained appellants' motion for a peremptory instruction to the jury to find for the defendant. When the well recognized principles of law, above pointed out, are applied to the facts of this case, there can reasonably be no difference of opinion that judgment should have gone for the defendant.

In Kerr v. DeLaney, 28 Ky. Law Rep., 1143, we said.
"Ordinarily, the question of the location of a disputed patent is one for the jury, if the trial be at law; but where, as here, certain principles of law are to be enforced with reference to the dispute, which, when applied, leave no question about which a contrariety of opinion could reasonably exist, the court should enforce them by a peremptory instruction.

"The primary question in this case was, whether or not certain timber, cut and sold by appellant, stood on the Sullivan patent, or the eighteen acre patent issued to appellant's father, Samuel Kerr. As the Sullivan patent was the elder grant, wherever the two lap the elder must prevail. The establishment of the lines of the Sullivan boundary, as we have indicated in this opinion should be done, leaves no doubt that the timber stood within the boundary of the Sullivan patent, and this being established, the appellees must prevail."

Appellants' motion for a peremptory instruction should have been sustained; and upon a re-trial of the case, unless the evidence differs materially from that in the present record, such an instruction should be given.

Wherefore, the judgment is reversed for further proceedings.