## Rock Creek Property Company v. Hill.

(Decided January 26, 1915.)

### Appeal from McCreary Circuit Court.

1. Champerty and Maintenance—Instructions.—Where no facts are proven sufficient to raise the question of champerty, no instruction should be given to the jury on that point.

2. Trial—Submission to Jury.—Where the essential facts of a case are uncontroverted and there is nothing but a question of law in the case, the same should not be submitted to a jury.

3. Deeds—Description—Intention of Parties.—A recital of quantity in a patent or deed is merely descriptive, and yields even to courses and distances, unless the instrument makes it clear that it was the intention to convey only a definite quantity.

4. Deeds—Construction.—The rule is well established in this State, that courses and distances yield to the calls for the lines of other patents, which are of record and susceptible of definite and certain location.

5. Deeds—Intention of Parties.—In the construction of deeds and conveyances the court seeks the intention of the parties.

6. Patents—Boundaries.—Where established lines are called for in a clear way, and where to follow or go to them, would do no violence to other surveys, then in order to locate a line as intended by the patentee, the court will consider the established lines called for in the patent as controlling.

O. H. WADDLE & SONS and J. N. SHARP for appellant.

W. R. CRESS & SON for appellee.

Opinion of the Court by Judge Nunn—Affirming.

The appellant was the plaintiff below, and brought a suit in ejectment against the appellee, William Hill, to recover possession of land in what is now McCreary county. The suit was brought in Wayne county, and one trial was had there. It was transferred to McCreary, when that county was created. The case was submitted to a jury and Hill won.

In May, 1866, ten separate patents were issued to Fox, Hardin and Burke, partners. The surveys adjoin and are said to contain 200 acres each. Appellant claims under these patents. The land in controversy is within the boundary of three of these Fox patents. One of the Fox patents contains at least 300 acres and shows an unlocated exclusion of 75 acres in general terms, and conflicts with a senior patent taken out by Andrew Lewellen. But the conflict with that survey does not involve

more than 15 or 20 acres, and is not in issue. The defendant, William Hill, is the owner of the Lewellen survey and resides on it. There is no contest about his right to hold all of the Lewellen land; the controversy is as to his claim of title to about 100 acres south of the Lewellen line, and within the boundary of the Fox patent. He claims this boundary under a senior patent issued in 1859 to Harrison Bell and Coleman Bell, brothers.

The beginning corner of the survey of the Bell brothers is established beyond dispute, and is a maple, a corner to another patent issued to Harrison Bell in 1849. This maple is situated more than a mile from, and south of, the Lewellen land. From the maple a boundary with 13 calls is undisputed, and this is the southern boundary of the Bell brothers survey. The 13th call on the southern line stops on the south line of another Harrison Bell survey made in 1858. All the trouble comes from the effort to locate the remaining calls of the Bell brothers survey. These other calls begin at a stake on the Harrison Bell line, *thence N. 47 W. 40 poles to a stake; S. 40 W. 199 poles to a stake on Andrew Lewall's (Lewellen) line; thence binding on said line S. 55 E. 100 poles to a stake; thence N. 80 W. 100 poles to a stake on Bell and Dolin's line; thence binding on said line to the beginning.* The Andrew Lewellen line and the Bell and Dolin lines are established, marked and recognized by both parties, but to follow the course and distance call of N. 47 W. 40 will not come anywhere near the Lewellen line. If the call from the Harrison Bell line be changed from "N. 47 W." and run a course slightly west of north, or insert a due north call after the N. 47 W. call, and lengthen the line about 300 poles, instead of 40 poles, as called for in the patent, it will strike a corner of the Lewellen survey, and from which point a boundary line of that survey runs approximately the course next called for in the Bell brothers survey. After that call is so located, it is easy enough to follow the lines of the other patents named, and reach the maple tree at the beginning corner. But to do this the survey will contain 500 or 600 acres instead of 150, as called for in the patent, and as included within its boundary if the patent courses and distances be strictly followed. The question is, therefore, whether the courses and distances shall control or whether they shall be so changed as to reach and follow the Lewellen and Bell and Dolin lines;

that is, whether courses and distances shall yield to a line so marked as to rank it with fixed objects and natural barriers.

Neither party has had actual possession of the land in question for a sufficient time to give title by prescription. Two or three years before the suit was filed Hill built a cabin within the disputed territory and made a small clearing. For more than 20 years Hill and those under and through whom he claims have cut timber off of the land, but until the cabin was built there was no continuous possession. If the boundary be established by using the lines of the Lewellen and Bell and Dolin surveys called for, then Hill's claim must prevail, for the Bell brothers patent under which he claims is the oldest. The case is really a question of law, as the facts are admitted. But the lower court submitted the case to the jury on two questions and told them to find for the defendant: (1) If the land was included within the boundary of the Bell brothers survey, and (2) if the plaintiffs purchased it while the defendant Hill was in the actual possession. The jury found for Hill under the first instruction. The second instruction should not have been given, because there were no facts proven to raise the question of champerty. Neither should the first have been given, because, as already stated, there is nothing in this case but a question of law, for the essential facts are uncontroverted.

If the courses and distances are strictly followed, then the tract will contain only 150 acres, and this is the amount that the warrant and patent call for, and if so run it will not include the disputed 100 acres next to the Lewellen land. But it is well settled that a recital of quantity is merely descriptive, and yields even to courses and distances, unless the instrument makes it clear that it was the intention to convey only a definite quantity. Jennings v. Monk, 4 Met., 103; Young v. Craig, 2 Bibb., 270; Mercer v. Bates, 4 J. J. Mar., 344; Alexander v. Hill, 32 Ky. L. R., 1147.

Again, if courses and distances be strictly followed, then the calls for the Lewellen and Bell and Dolin patent lines must be ignored. The rule is well settled in this State that courses and distances must yield to calls for the lines of other patents which are of record, and susceptible of definite and certain location, as in this case. Beshears v. Joseph, 108 S. W., 307, lays down the rule as follows·

"That in determining boundaries marked corners are the more satisfactory evidence, then natural objects, such as streams, ridge and cliff, then calls for the lines of other patents, which are of record and susceptible to definite and certain location, then course, and lastly distance."

There was a somewhat similar state of facts in the case of Alexander v. Hill, *supra,* and the court said:

"This patent calls for a tract of land bounded by certain natural objects and artificial lines and established points, and provides that by following certain fixed courses and distances these natural objects and artificial lines and fixed points will be reached. But when it is shown by actual demonstration that when the lines are run according to the courses and distances called for the natural objects and artificial lines are not reached, what shall we do?      *      *      *

"This court has many times passed upon this question, and the law is now well settled that where there is a conflict between the course and distance and recognized objects establishing the boundary lines of a survey, course and distance must yield to natural objects and established boundaries of other tracts called for, and designated known points therein must be accepted as the true boundary of the land in question."

It may be conceded that the only lines actually surveyed when the warrant was laid were those shown by the first 13 calls in the patent, referred to above as constituting the southern boundary, and that to locate the Bell brothers patent by the surrounding lines as called for therein would differ materially from the plat of the original survey, which was filed with the land warrant and introduced as evidence on the trial. Mr. Rice, who made the survey, and is 76 years old, was introduced by the appellant and testifies that more than 50 years ago in company with the two Bell brothers, he did survey the southern boundary of 13 lines, and only those lines, and that then they told him they wanted to go from that place to the Lewellen land and follow the lines of that and Bell and Dolin to the beginning. He was told to prepare the warrant for 150 acres, but when he went home that night and made the plat, he saw that the survey would contain 600 acres, so, in order to make the warrant conform to the acreage called for, he cut down the distances without changing the courses or reference

to the patent lines called for. Without informing Bell brothers of the change, he sent the papers on to the land office at Frankfort, and the patent was issued in the form they now have it. It is apparent that the Bells never knew the surveyor had made any change in the plat, and their conduct with reference to timber cutting and subsequent conveyances are such as to show that their intention was to take title to all the land bounded by the Lewellen and the Bell and Dolin patents, and which, in their opinion, would amount to 150 acres. It is not necessary to discuss the competency of Mr. Rice's testimony, and for purposes of this case it may be accepted as admissible and true. While it serves to show the purpose of the surveyor, it does not weaken the evidence of the clear intent of the Bells, as above indicated. In the construction of deeds and conveyances the court seeks the intent of the parties to it.

Appellant contends that the rule that courses and distances yield to established lines does not apply where a material excess in acreage appears, and where the surveyor laid down most of the survey by protraction and the dispute was in that way brought about, and where the surveyor did not know the location of the patent lines called for as boundaries, and made a mistake in calling for them. In support of this claim appellant relies upon the cases of Daniels v. New Era Land Co., 137 Ky., 535, and Bryant v. Strunk, 151 Ky., 97. The appellant, however, is in but little, if any, better position with reference to the excess acreage. Its patent relied upon chiefly to cover the 150 acres in conflict is subject to the same criticism. It not only contains 100 acres more than the patent calls for but has a general and unlocated exclusion of 75 acres. While the surveyor may not have known the location of the Lewellen and the Bell and Dolin lines called for, yet it does not follow that he made a mistake in calling for them. He inserted those calls because he was directed to do so by the patentees. Except that they told the surveyor they wanted to lay a warrant for 150 acres there is nothing to show that the Bell brothers made a mistake in calling for the patent lines. All the land within the boundary they named was vacant at the time, and they were familiar with the Lewellen line and were part owners of the lands bounded by the other lines referred to. The acreage was merely their opinion as to the quantity contained within the boundary which they named.

In the Daniels case, as shown by the record, there were over 20 lines and only two fixed objects named whereby to identify them. One was a tree at the beginning corner and the other was a tree at the end of the eleventh line. Stakes were called for as markers in all the other lines. Three of the calls were omitted by the copyist in issuing the patent. So, it will be seen, that practically the land was laid out by courses and distances only. But two fixed objects were called for, and they were of no assistance in determining the shape of the survey. The original plat has always been considered a potent fact to aid in the location of land, and in the Daniels case it was deemed controlling, because it was the best and only tangible evidence available. The conflict in the Daniels case was brought about by an error in the courses and distances named in the patent, and there being no monuments or established lines to guide the court in their location, it was held that the plat should control, and might be considered to correct a mistake in the patent. But it was none the less a question of evidence. It controlled, that is, outweighed the evidence as to courses and distances, because it was better evidence and, in the absence of monuments or established lines, it was the best evidence in the case.

In the Strunk case the court gave effect to the plat accompanying the land warrant rather than to the courses and distances of the patent. In doing so it ignored certain calls for established lines. This was justified by a combination of facts appearing in the case. Two of the facts appear in the case at bar, viz: The disputed lines were laid down by protraction—that is, were not surveyed, and the acreage was excessive—five times as much as the patent called for. The established lines were called for in such a confusing way as to make their control impracticable. More than that, there were nine calls given in the patent, and they were vague and some of them clearly erroneous, whereas it required about 40 lines for the surveyor to bound it at the time of the trial.

The ruling in the Daniels and Strunk cases was in no sense a departure from the rule as to relative weight to be given courses and distances, established lines and fixed objects. Where the established lines are called for in such a confusing way as to render it doubtful which one was intended, or where an attempt to follow or go to them would do violence to other surveys, then, in or-

der to locate the true lines, the court considered the original plat as controlling.

The judgment of the lower court located the Bell brothers survey by the established lines called for, and it is, therefore, affirmed.