### Cincinnati, New Orleans & Texas Pacific Railway Company v. Goode.

(Decided March 10, 1916.)

### Appeal from Lincoln Circuit Court.

1. Appeal and Error—Subsequent Appeal—Questions Concluded.— Where on a former appeal of the case this court approved the ruling of the trial court in refusing a peremptory instruction directing a verdict in defendant's behalf; approved the instructions given, except one, instead of which it indicated the correct form in which it should be given; and held that the verdict was not flagrantly against the evidence; and on the last trial the evidence was substantially the same and the instructions approved were given, this court on a subsequent appeal will not again consider those questions, as the decision of the Court of Appeals on appeal is the law of the case on a subsequent trial and appeal.

2. Appeal and Error—Verdict—When Not Flagrantly Against Evidence.—The fact that the jury accepted plaintiff's version of how he received his injuries, instead of that of two witnesses of the defendant railroad company, furnishes no reason for setting aside the verdict on the ground that is was flagrantly against the evidence.

3. **Damages—When Not Excessive—Permanent Injuries.—**Where plaintiff's heel was crushed off; he was confined six months in a hospital; for six years he has suffered pain and was forced to dress his foot every day; his leg is shriveled and shortened and foot subject to abscesses and he will walk on the ball of his foot all his life, the effect of his injury being practically the same as amputation of the foot; and where at the time of his injury he was 24 years old, in excellent health, earning $90 a month, with a life expectancy of 32.70 years, and has as a consequence of his injury earned nothing of consequence the six years since, and his ability to earn money is permanently impaired: Held, that a verdict of $12,500.00 is not so excessive as to authorize the court to set it aside.

K. S. ALCORN, JOHN GALVIN and EDWARD COLSTON for appellant.

T. J. HILL, ROBERT HARDING, EMMETT PURYEAR, O'REAR & WILLIAMS and JOHN W. RAWLINGS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE.—Affirming.

There have been three trials of this case in the circuit court, each resulting in a verdict and judgment for the appellee, W. E. Goode; the first being for $8,000.00, the second for $7,500.00, and the third for $12,500.00. The first and second judgments were reversed on appeal. The opinion on the first appeal will be found in 153 Ky., 247; that on the second appeal in 163 Ky., 60. The present appeal is from the third and last judgment. The recovery on each trial was by way of damages for injuries sustained to the person of the appellee caused, as alleged, by the negligence of the servants of the appellant, Cincinnati, New Orleans & Texas Pacific Railway Company.

On the first appeal (C., N. O. & T. P. Ry. Co. v. Goode, 153 Ky., 247), the opinion expressed the conclusion that as the pleadings then appeared the first trial of the case was properly had under the State law, but that as there was such proof on the trial of contributory negligence on the part of the plaintiff as precluded a recovery under the State law, the trial court should have given a peremptory instruction directing a verdict for the defendant, hence the judgment in favor of the former was reversed because of the failure of the court to give such instruction. But in a response to a petition for rehearing the court said:

"Under the facts of this case as they were developed in the evidence, appellee was engaged in interstate com-

merce when he received the injury complained of. But the case, as made up in the lower court by the pleadings, evidence and instructions, was practiced under the rules of law prevailing in this State and not under the Federal Statute known as the Employers' Liability Act, and we do not see our way clear, in the condition of the record as it now stands, to define the rights of appellee or the liability of the appellants under the Federal Statute. But on the return of the case the court will permit the parties to tender and file such amended pleadings as they may desire, and will hear and adjudge the case under the Federal Statute.    *    *    *    So much of the opinion as directs that a peremptory instruction be given, had reference to a trial under the State law, and is withdrawn.''

In the opinion on the second appeal (163 Ky., 60), it is stated that upon the return of the case following the reversal of the first judgment, the plaintiff filed an amended petition setting out more distinctly that he had in his petition facts sufficient to bring his case within the scope of the Federal act. But the opinion reversed the second judgment of the circuit court because of error in the instruction on the measure of damages.

Appellee was a brakeman in appellant's employ and his injuries were sustained in its railroad yards at Ludlow, Kentucky, while serving it in that capacity. As the facts upon which he based his right to recover and those relied on in support of appellant's defense, are fully set forth in the opinions of the former appeals, an elaborate restatement of them here is deemed unnecessary.

The issues of law and fact involved are sufficiently shown by the following excerpts from the opinion on the second appeal:

''It will thus be seen that according to the evidence in behalf of Goode, Hollingsworth was guilty of negligence in approaching the switch at the same time that the passenger train was approaching it, and that Goode, in the discharge of his duty, was endeavoring to stop this engine so that a collision might be avoided.

''On the other hand, the evidence in behalf of the railway company is that Hollingsworth did not receive any signals from Goode to stop his engine, but voluntarily stopped it at a place where there would be no danger of a collision between it and the passenger engine, and that he did this because he knew the passenger train was going out and had the right of way over him. It is further

shown by the evidence of the railway company that Goode did not receive his injuries in the manner stated by him, but that he stepped on the pilot of McCarthy's engine for the purpose of riding, and in some manner unexplained by the evidence slipped or fell from the pilot, receiving the injuries complained of. In short, according to the evidence of the railway company, there was no negligence on its part, and the injuries received by Goode were due to his voluntary act in getting on the pilot of the engine without being directed so to do or required by his duties so to do.    *    *    *

"The facts of this case present concurrent acts of negligence that produced the injury. One negligent act was committed by Goode in getting in the way of McCarthy's engine, which he knew was coming, because he had signaled it to come; and the other negligent act was committed by Hollingsworth in approaching the switch at a time when he should have stopped in a safe place to permit the passenger train to get out ahead of him. The negligence of Goode was a contributing but not the sole cause of the injury, because the injury would not have happened except for the concurring negligence of Hollingsworth. And this being so, we think it was proper to submit the case to the jury under proper instructions.    *    *    *

"On a return of the case, in lieu of the instructions given (on the measure of damages) the court should tell the jury 'that if you believe from the evidence that the injuries received by the plaintiff were caused by the negligence of the defendant in the manner and under the circumstances described in instruction number one, but were contributed to by the negligence of the plaintiff, then you will diminish the damages, if any awarded him, in proportion to the amount of negligence attributable to the plaintiff, so that the plaintiff will not recover full damages, but only a proportionate part bearing the same relation to the full amount as the negligence attributable to the defendant bears to the entire negligence attributable to both.' "

It is insisted by counsel for the appellant railway company that the circuit court erred in the last trial: (1) In refusing a peremptory instruction directing a verdict in its behalf; (2) In instructing the jury; (3) In refusing instructions offered by appellant; (4) That the verdict is flagrantly against the evidence and excessive in amount.

Every ground urged by appellant for the reversal of the judgment, except its complaint of the excessiveness of the verdict, was settled by the opinion on the second appeal adversely to its contentions, and it is a well recognized rule that the decision of the Court of Appeals on appeal is the law of the case on a subsequent trial, where the evidence on the subsequent trial is substantially the same as on the first trial. L. & N. R. Co. v. Murphy, 150 Ky., 176; Beaver's Admr. v. Proctor Coal Co., 159 Ky., 518; Mutual Benefit Life Ins. Co. v. O'Brien, 149 Ky., 514; I. C. R. Co. v. Haynes, 144 Ky., 508; Ky. Distilleries, etc., Co. v. Wells, 149 Ky., 275; Junior Order U. A. Mechanics v. Ringo, 146 Ky., 602; C. & O. Ry. Co. v. Johnson, 151 Ky., 809.

In L & N. R. Co. v. Setser's Admr., 149 Ky., 162, we held that where on a former appeal the court indicated the instructions that should be given on a new trial, and the evidence on the new trial is substantially the same as on the first trial, no instructions other than those indicated should be given. In Ky. Traction & Terminal Co. v. Downing's Admr., 159 Ky., 502, we held that where the evidence was the same on two different trials, defendant having failed to request an instruction on the first trial based upon the evidence, was concluded from complaining of the court's refusal to give such instruction on the second trial. In Standard Oil Co. v. Marlowe, by etc., 162 Ky., 1, we held that where on a former appeal only certain instructions are considered and modified and the court does not direct that they alone shall be given on another trial, an instruction not criticised is tacitly approved and becomes the law of the case, and should be given on the second trial, either in that form or in a form that will not materially change the effect thereof.

On the second appeal of this case all the instructions given on the second trial, except the one on the measure of damages, received our approval, and as these instructions, together with a correct one on the measure of damages, then directed by the opinion to be given on another trial, were all given on the last trial upon the submission of the case to the jury, it is manifest that the appellant is estopped to complain that the jury were not properly instructed. It is equally manifest that its complaint of the refusal of the court to grant the peremptory instruction asked by it is without merit, as this court expressly held on the second appeal that the refusal of the per-

emptory instruction by that court on the second trial was not error, and it is not claimed by appellant that the evidence heard on the last trial differs in any respect from that introduced on the first and second trials. It follows from what has been said that the additional instructions that were offered by appellant were properly refused by the trial court. In other words, the case was submitted to the jury on the last trial upon the instructions which the opinion of this court on the second appeal approved and directed to be given, and this being so, other instructions would have been unnecessary and unauthorized.

The appellant's complaint that the verdict returned on the last trial is flagrantly against the evidence, was also made on the second appeal of the verdict returned on the second trial. As the contention was not then sustained, we are concluded by that ruling and cannot, therefore, now consider the question; moreover, no reason is apparent for sustaining the contention. The only material witnesses furnishing evidence on the trial, as to the manner in which appellee's injuries were received, were appellee and the engineers, Hollingsworth and McCarthy. According to the testimony of the former, his injuries were caused by the negligence of Hollingsworth. According to the testimony of Hollingsworth and McCarthy they were caused by appellee's negligence alone. If the jury were willing, as was patently the case, to accept appellee's testimony, instead of that of Hollingsworth and McCarthy, as the truth of the matter, that fact, conceding the credibility of each of the three witnesses, might plausibly be urged as demonstrating that the verdict was not in accord with the weight of the evidence, but it would not necessarily demonstrate that it was flagrantly against the evidence. The jury were the triers of the issues of fact submitted to them by the court's instructions, and the fact that the verdict may not be in accord with the testimony of a majority of the witnesses, furnishes no reason for setting it aside. It cannot properly be claimed that mere numerical superiority of witnesses on one side constituted preponderance of proof.

In C. & O. Ry. Co. v. Gatewood, 155 Ky., 102, we held that a verdict for the plaintiff could not be disturbed as flagrantly against the evidence, where the only testimony in support of it was that of the plaintiff, which was con-

tradicted by a number of witnesses. L. & N. R. Co. v. Helm, 121 Ky., 645.

In passing on this question in Lou. & Interurban R. Co. v. Roemele, 157 Ky., 84, we said:

"We do not feel justified in saying that the verdict is contrary to law or flagrantly against the evidence. To say that a verdict is contrary to law is to declare that it is contrary to the instructions of the trial court, whether right or wrong in their statement of the law; Lynch v. Sneed Iron Works, 132 Ky., 241; and to say of a verdict that it is flagrantly against the evidence, means that it is palpably against the evidence. The fact that the evidence is conflicting or that this court would have made a different finding on the facts; or that, in its opinion, the verdict is against the weight of the evidence, furnishes no cause for setting it aside on this ground. Empire Coal & M. Co. v. McIntosh, 82 Ky., 334; McCoy v. Martin, 4 Dana 580; Chiles v. Jones, 3 B. Mon., 51; Page v. Carter, 8 B. Mon., 192." The following additional authorities are to the same effect: Lewis, Wilson & Hicks v. Durham, 144 Ky., 704; C. & O. Ry. Co. v. Booth, 149 Ky., 245; Stark Dist. Co. v. Friedman, 150 Ky., 820; Sou. Ry. Co. v. Alford's Admr., 150 Ky., 808; Sacrey v. Lou. Ry. Co., 152 Ky., 473; C., N. O. & T. P. Ry. Co. v. Richardson, 152 Ky., 814.

It only remains to consider appellant's final contention, as to the alleged excessiveness of the verdict. The damages recoverable as, in substance, defined by the instructions of the trial court, included reasonable compensation to appellee for such mental and physical suffering and impairment of his power to earn money down to the time of the trial, and thereafter to result, as was caused by his injuries, resulting from the negligence of appellant, not to exceed $15,000.00; to be diminshed, however, by the contributory negligence of appellee, that is, in proportion to the amount of negligence attributable to him, so that he should not recover full damages, but only a proportionate part, bearing the same relation to the full amount as the negligence attributable to the appellant bore to the entire negligence attributable to both.

We must look to the evidence for the character and extent of the appellee's injuries. They are shown by his own testimony and that of Dr. O'Bannon, a physician. The former, after testifying that his right foot was caught by the pony truck of the engine operated by McCarthy

and his heel cut off, was required to take off his shoe and exhibit the injured foot to the jury. He further testified as follows:

"Q. What is the distance your heel is from the floor? (standing). A. About 2 or 3 inches. Q. Bear your weight on that as best you can and show the jury how close it will get to the floor in a natural position. * * * Q. Turn your back to the jury, please, sir. How much of the fleshy part of the heel is gone? A. All the flesh. Q. This leader or tendon that runs from the heel at the back on up the leg, * * * is that stiff? A. Yes, sir. A. What motion, if any, have you got in the joint? A. Very little. Q. Show that to the jury, hold your foot up please and show it to them. Is it in a rare (raw) condition still? Tell the condition it is in now. A. It is inflamed around the edges. * * * Q. At the point I put my finger, what is that, flesh or bone? A. It is bone. Q. How often have you had to dress it? * * * A. Haven't missed a day dressing it. Q. Here appears to be some brown like sore, is that tender? A. That is medicine and stuff on my foot. Q. Do you still put medicine on it? A. Yes, sir. * * * Q. What doctor did you have (at the hospital)? A. Dr. Ransahoff. * * * Q. What effort, if any, did he make to restore that heel? A. He taken the flesh off the inside of the leg and grafted it on the heel. * * * Q. Do you know whether he was ever able to get it to grow there or not? A. No, sir, there is no flesh there. Q. With your foot in that condition were you ever able to go back there to work? A. No, sir. Q. What, if any, duties of your former employment can you perform? A. None of them, no, sir. Q. And you were making at that time how much? A. $90.00 per month. Q. Tell the jury what work, if any, you have done or tried to do since this injury? A. Not any to amount to anything. Q. Was any injury done to the front part of your foot? A. Yes, my instep was torn out, leaders torn loose. Q. Are there any scars there? A. Yes, sir. Q. How deep was that cut? A. It was pretty deep; I couldn't tell how deep, you can see the cinders in there now. Q. What suffering and pain, if any, did you endure from it and have you endured from it since that time for five years?. Q. Have you had pain all the time? Q. Tell the jury what effect—how you are affected when you walk or try to walk on it. A. I walk with a bandage on my heel and my foot padded up. * * * Q. With even that soft pad tell how it affects you when

the bone presses against it, when you put any weight on it? A. It hurts, I can't stand any weight on it. Q. Tell the jury how long you were in the hospital? A. I was in the hospital six months. Q. After you got out of the hospital where did you go? A. I came home to McKinney. Q. What was the first work you tried to do? A. The first work I tried to do was just giving tickets to lumber shipments, measuring lumber. Q. What do you make on an average at that? A. On an average about fifty cents a day, owing to what come in. Q. Work of that character, is it steady or just transitory work? A. It wasn't any steady work. Q. What is the utmost you have been able to make by work of that kind, or any other, since this injury in a year? A. Very little. Q. How much would you put it at. A. Not over a hundred dollars, I suppose."

Dr. O'Bannon testified as follows:

"Q. Did you ever make an examination of this limb? A. Yes. Q. How many times? A. I have, possibly, two or three times. Q. When did you examine it the last time? Q. Will you describe what your examination revealed the condition of the heel and tendons are? A. The flesh has all been torn off the heel, the skin has grown over it, it is down to the bone, no muscles or anything left, the muscles and ligaments are torn away. Q. Stand up there Mr. Goode; point out, doctor, to the jury where the flesh has been torn away? A. All the back part of the heel has been cut off, up as far as the ankle bone; it is perfectly solid to the bone, no skin there, except what has grown over it since the wound healed. Q. What is the condition of the joint? A. The joint is intact, the main tendon is a little shortened there, adhesions. Q. Where are those adhesions? A. In here (indicating), the foot cannot go back this way (indicating) but you can bring it up. It ought to bend to an angle of 45 degrees, which on account of the adhesions cannot be done, it don't let the foot come up. Q. Assuming that flesh was grafted on there and wouldn't remain there and you found the heel in its present condition, with the injuries you have described there, is that condition there permanent or not? A. Yes, sir, the injury will be permanent. Q. Is there any difference in the legs? A. The muscles, I didn't measure it this time, the muscles in the calf of the leg were smaller when I measured them, that has been a year or more ago since I measured it. Q. To refresh your recollection wasn't it one and a half inches shorter? Measure it now.

A. I haven't a tape line; there was a considerable difference in the size of the legs due to the muscles, of course. Q. What is your judgment now from the examination you have made in the presence of the jury in the size of the legs? A. It would be pretty hard to tell exactly without measuring. Q. You did measure it once? A. If I made any measurements, I measured it about a year ago. Q. Is that difference apparent to you now? A. Yes, sir. Q. In your judgment and opinion would it be as much as one and a half inches shorter? A. Possibly it would be that much. Q. Mr. Goode, stand up with your back towards the jury. Doctor, what is it that keeps that heel elevated from the floor there? A. Shortening of that main tendon. Q. Behind here? A. Yes, sir. Q. Back of the heel, running up the leg? A. Yes, it don't relax.''

On a cross-examination the doctor further testified:

''Q. You said just now the injury was permanent, I will ask you what you meant—the loss of the flesh? A. The loss of the flesh is permanent and the loss of the motion of the ankle joint is permanent. Q. The loss of motion of the ankle joint is just what you have indicated, he can shift his foot up as he did before, can't he? A. No. Q. You examined his foot some time ago? A. Yes. Q. I will ask you if his heel hasn't healed considerably since then (the last examination)? A. There was a little abscess then, running. Q. Is there any abscess there now? A. No, sir; from the history I got of it he frequently has a little abscess there. Q So the injury you saw is a loss of the fleshy part of the heel and a slight shortening of the tendon of the heel? A. Yes, sir.''

Upon being re-examined the doctor testified as follows:

''Q. You say you saw an abscess running? A. Yes, sir, at one time when I examined him. Q. Doctor, could you tell the jury what caused the abscess? A. I think it was due to rather a degenerative foot, a lack of vitality in the parts. Q. From the degenerated conditions there in your judgment and opinion as a physician is he liable to have abscesses? A. Yes, sir, occasionally there may be a small abscess come there. Q. And that is due to the degenerated conditions there? A. Yes, of course any little bruise to the heel might produce an abscess.''

Upon re-cross-examination Doctor O'Bannon further testified:

''Q. Have you noticed Mr. Goode in walking about here whether he walks with a slight limp or a decided

limp? A. He walks on the ball of his foot. Q. Is there anything to prevent him from using a shoe with a built up heel? A. He can't use a shoe of that kind, he can't stand pressure on the heel bone because there is no cushion there. Q. I will ask you if the heel hasn't healed very considerably, more than when you saw it a year ago? A. There wasn't any abrasion then except the one little place where there was an abscess, the epidermis, the skin, has covered the bone. Q. A solid skin has grown over it? A. Yes, sir, there is no flesh over the bone, not a particle.''

Appellee's injuries were received six years before the last trial. 'According to his uncontradicted testimony, he suffered pain from the injuries every day of the six years and on each of these days his injured foot required dressing and bandaging. He was confined in a hospital for six months next following the receiving of the injuries, during which time a surgeon in charge of his case unsuccessfully undertook to cut flesh from his leg and graft it on his heel, in the attempt to form a cushion, so that he might be able to bear some pressure on it and at the same time assist it to heal. It is therefore apparent from the evidence that the injury sustained by appellee has resulted in a shriveled and shortened leg and a foot that will be subject to abscesses from time to time. He will walk all his life on the ball of his foot, because of the shortening of the leg tendon and the absence of the cushion to the heel, of which he was deprived by the tearing away of the muscles and flesh at the time of the accident. In other words, the present condition of the injured foot makes him nearly as much a cripple as would its amputation, and will prevent him from engaging in any occupation that will require him to do any amount of walking or to remain for any length of time upon his feet. At the time of receiving the injury complained of he was twenty-four years of age, in excellent health and had a life expectancy of 30.70 years. He was then earing $90.00 per month, or $1,080.00 per year, but by reason of his injuries has earned nothing of consequence since. But for his injuries he would have earned during the six years that have intervened since the accident, $6,480.00, or half the damages awarded him by the jury, had he continued in the service of the appellant as a brakeman, to say nothing of his chances for promotion and increase of salary during the same time.

In view of the evidence the permanent impairment of appellee's ability to earn money is beyond all doubt; and when to such impairment is added the physical and mental suffering he has experienced and will yet suffer from the injury to his foot, we are unwilling to say that the amount awarded by the jury is so large as to authorize us to declare it grossly excessive. While at first blush it may seem most liberal, if not out of proportion to the injury received, yet it is not so grossly excessive as to exceed the bounds of reason or to appear to have been the result of passion or prejudice on the part of the jury. In this jurisdiction "the rule is that a verdict will not be set aside as excessive unless it is so grossly disproportionate as to the measure of damages or so palpably against the evidence, as to shock the conscience and raise an irresistible inference that it was influenced by passion or prejudice." Lou. Ry. Co. v. Larberg, 158 Ky., 44.

The fact that a verdict is excessive will not authorize the court to set it aside. It must be so grossly excessive as to make it clear that it was the result of passion or prejudice on the part of the jury. As said in Lou. Ry. Co. v. Bryant, 142 Ky., 159, the opinion quoting with approval from L. & A. R. Co. v. Cox's Admr., 125 S. W., 1056:

"It being peculiarly the province of the jury to fix the amount, their finding should never be disturbed unless it is made clearly to appear that it could not have been based upon the evidence, but must have been the result of caprice, passion or prejudice."

As previously stated, the injury sustained by appellee is practically equivalent to the loss of a foot or leg, and we have time and again approved recoveries for substantially a like amount as that awarded him for like injuries. L. & N. R. Co. v. Mitchell, 87 Ky., 327; L. & N. R. Co. v. Popp, 96 Ky., 99; C. & O. R. Co. v. Davis, 22 R., 1156; S. Cov., etc., Ry. Co. v. Weber, 26 R., 922; and in other states verdicts much larger have been sustained for injuries not more serious than those received by appellee. Tex., etc., R. Co. v. Kelly, 34 Tex. Civ. App., 21; Fonda v. St. P. City Ry. Co., 77 Minn., 336; Pittsburg, etc., Ry. Co. v. Simons, 79 N. E. (Ind.), 911; Scullin v. Wabash R. Co., 184 Mo., 695; Alberti v. N. Y., etc., R. Co., 118 N. Y., 77, 6 L. R. A., 765; Retan v. L. S., etc., Ry. Co., 94 Mich., 146; Smith v. Whittier, 95 Cal., 279; Phillips v. London R. Co., 42 L. T. R., 6.

Appellant's complaint as to the amount of the verdict is chiefly based on the contention that its size indicates that the jury did not take into consideration the contributory negligence of appellee, or make any reduction by reason thereof. This contention assumes a fact not shown by the evidence. But admitting that he was guilty of such negligence, still it was peculiarly within the province of the jury to compare his negligence with that of appellant, and after ascertaining the full amount of the damages, to award appellee such proportionate part thereof as the negligence attributable to the appellant bore to the entire negligence attributable to both. In any event, we can not, by mere conjecture reach the conclusion that this was not done by the jury. Nor. & W. R. Co. v. Thompson, 161 Ky., 814.

It being our conclusion that the verdict should not be disturbed, the judgment is affirmed.