## FORDSON COAL CO. v. SPURLOCK et al.

Circuit Court of Appeals, Sixth Circuit.
June 10, 1927.

No. 4777.

**1. Boundaries ⬅➡37(3)—Evidence held to establish survey's first three corners.**

In suit involving the true location of a grant of land, evidence *held* to establish the location of the first, second, and third corners of the survey.

**2. Boundaries ⬅➡7—Unknown seventh corner, between sixth and first corners in Kentucky survey, was properly located by extending sixth line from sixth corner and seventh line reversed from first corner.**

Where all corners of survey in Kentucky were known, except the seventh corner, which was the last corner, and the survey could not be closed by extending the seventh line from the end of the sixth line as called for, the location of the seventh corner was properly determined by extending the sixth line from the known sixth corner, and by extending the seventh line reversed from the known first corner until the two intersected.

**3. Boundaries ⬅➡3(6)—That survey includes 2½ times land patent calls for is immaterial in Kentucky, if boundary is otherwise clearly established.**

If the boundary is otherwise clearly established, it is immaterial in Kentucky that it contains 2½ times as much land is called for in the patent.

**4. Boundaries ⬅➡3(1)—In Kentucky, where calls of line are inconsistent, marked corners, natural objects, lines of other patents of record and susceptible of certain location, courses, and distances must be accepted in order.**

Rule in Kentucky for locating a line having inconsistent calls is to accept best evidence, which is in the following order: Marked corners, those clearly identified and which are notorious objects; then natural objects not marked, such as a stream, a road, a cliff; then calls for lines of other patents, which are of record and susceptible of certain location; then courses; and then distances.

**5. Boundaries ⬅➡3(3)—Object called for by Kentucky survey held controlling over course and distance; line not being ideal line, and location of object not being mistaken.**

Where object called for as the terminus of the first line of a survey in Kentucky could not be reached by following the course and distance of the line as called for, the object called for controlled over the course and distance; there being no evidence that the line was an ideal line, or that the location of the object called for was mistaken by the surveyor.

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Suit by the Fordson Coal Company against Wiley Spurlock and others. From a judgment locating a grant of land, plaintiff appeals. Affirmed.

Cleon K. Calvert, of Pineville, Ky. (John G. Bruce, of Pineville, Ky., and W. R. Middleton and Clifford B. Longley, both of Detroit, Mich., on the brief), for appellant.

Joseph C. Jones, of Frankfort, Ky. (Charles H. Morris and Morris & Jones, all of Frankfort, Ky., and William Lewis, of London, Ky., on the brief), for appellees.

Before DENISON, DONAHUE, and MOORMAN, Circuit Judges.

MOORMAN, Circuit Judge. [1] The true location of a grant of land from the state of Kentucky to William Spurlock, made

April 11, 1853, is the subject of this litigation. The patent describes the land as follows:

"Lying and being in the county of Clay on the waters of Bullskin or Spurlock branch and bounded as followeth (to wit): Beginning at a corner of a 50-acre survey made in the name of Wm. Spurlock and bounded as followeth (to wit): Beginning at a chestnut and chestnut oak and black oak; thence N 64 W 260 poles to a stake, a corner of a 50-acre survey made in the name of John R. Graham; thence S 52 W 56 poles to three beeches, dogwood and chestnut on the head of one fork of Bullskin; thence S 66 W 66 poles to a stake; thence W 94 poles to a stake; thence S 41 E 100 poles to a stake; thence S 64 E 360 poles to a stake; thence N 163 poles to the beginning."

Appellant, who brought the suit, claims that the land lies on the headwaters of Bullskin, a tributary of Red Bird fork of the South fork of the Kentucky river, and appellees claim that it lies mainly on the headwaters of Lower Jack's creek, another tributary of the Kentucky river. A ridge divides the two streams. Two other patents issued to William Spurlock as assignee of John R. Graham, July 8, 1847, upon surveys of May 4, 1846, are pertinent to the location of the boundary in dispute, one for 50 and the other 150 acres. The locations of these tracts are definite and certain, although appellant's surveyor failed to show the 150-acre tract on the map which he filed. The beginning corner of the 200-acre tract is said in the description to be a corner of the 50-acre survey. The lower court found that there is no corner of the 50-acre survey at this point, but a corner of the 150-acre survey, the twelfth corner thereof. This, we think, was conclusively shown by appellees' proof, and, despite the denial of any knowledge of the 150-acre tract by appellant's engineer, is partially admitted in appellant's bill, where it is twice said that the beginning corner is a corner of the 150-acre survey. Besides, the call in the 150-acre survey from the twelfth corner thereof is "thence S 64 W. 260 poles to a stake and corner to Graham's 50 acres aforesaid," which corresponds with the first call of the 200-acre tract as corrected by the court. There can, in our opinion, be no doubt that the beginning corner, the location of which without reference to other patents is agreed upon, is the twelfth corner of the 150-acre tract.

The first call of the 200-acre patent is for a line running N 64 W 260 poles to a stake, a corner of a 50-acre survey made in the name of John R. Graham. If the line were run according to the course called for, it would not reach the 50-acre survey. Appellant contends that it should be so run, disregarding the object of the call; whereas appellees contended and the court held that the courses and distances should give way to the object which was certain and definite.

The corner of the 50-acre survey nearest the beginning corner of the 200-acre tract is the tenth or northeastern corner, which, instead of being N 64 W 260 poles, is S 64 W approximately 260 poles. The lower court, by reading south for north, established the line, fixing the terminus at the tenth corner of the 50-acre tract, and then proceeded to the second call, running S 52 W 56 poles to three beeches, a dogwood and chestnut, which is the eighth corner of the 50-acre survey and the beginning corner of the 150-acre survey, concluding that the similarity of the timber called for as the eighth corner of the 50-acre survey with that called for as the third corner of the 200-acre survey, with other facts to which we need not refer, was sufficient evidence of the third corner of the 200-acre survey to disregard the calls of the second line thereof.

There was an objection to such location, resulting from the fact that there were two calls in the 50-acre survey between the beginning and ending points of this line, the beginning point being at the tenth corner and the end at the eighth corner. This was quite justifiably overcome by reference to the certificate of survey filed in the surveyor's office of Clay county, wherein the second call as there given was "thence with lines of same [i. e., the 50-acre survey] S 52 W 56 poles to three beeches, dogwood and chestnut corner to same and in the head of one fork of Bullskin," which would indicate that references to the lines of the 50-acre survey and a corner thereof as the terminus of the second line were omitted from the state grant by mistake, as the court below concluded.

[2, 3] The third, fourth, fifth, and sixth lines were located as called for in the grant, but the survey could not be closed by running from the end of the sixth line as called for; hence the problem of locating the seventh corner. This was done according to the practice in Kentucky by extending the sixth line and also the seventh line reversed until they intersected. Chambers v. Tharp (Ky.) 93 S. W. 627; Williams v. Brush Creek Coal Co., 149 Ky. 188, 148 S. W. 372; Louisville Property Co. v. Rose, 184 Ky. 221, 211 S. W. 743. To close the survey in that way would include within its boundary more than 2½ times as much land as was called for in

the patent, which, however, under the law of Kentucky, is wholly immaterial, if the boundary is otherwise clearly established. Mercer v. Bate, 4 J. J. Marsh. (Ky.) 334; Rock Creek Property Co. v. Hill, 162 Ky. 324, 172 S. W. 671; Rowe v. Kidd (D. C.) 249 F. 882, affirmed (6 C. C. A.) 259 F. 127.

[4] If the first line was properly located, there can be no serious doubt of the propriety of the court's departure from the courses and distances of other lines in completing the boundary; indeed, the case is argued here for appellant upon the theory that there was error in disregarding the course of the first call and laying down the line according to the object called for. The question, therefore, is whether the object of the call should prevail over the courses and distances thereof. Counsel for appellant put it this way: "Where the original surveyor, in making a survey, called for an object as the terminus of a line under the mistaken belief that it was at one place when in point of fact it was at another, will the bearings and distances given be controlled by the object, wherever it is, or will they prevail over the calls for the object?"

The answer to this would depend necessarily upon the statement that the surveyor believed the object "was at one place when in point of fact it was at another"—an hypothesis neither admitted nor proved. The rule in Kentucky for locating a line having inconsistent calls is to accept the best evidence. Such evidence was stated in Morgan v. Renfro, 124 Ky. 314, 99 S. W. 311, to be in the following order: Marked corners, those clearly identified and which are notorious objects; then natural objects, not marked, such as a stream, a road, a cliff; then calls for the lines of other patents, which are of record and which are susceptible of definite or certain locations; then courses; then distances. See Alexander v. Hill (Ky.) 108 S. W. 225; Brashears v. Joseph (Ky.) 108 S. W. 307; Rock Creek Property Co. v. Hill, 162 Ky. 324, 172 S. W. 671, and Rowe v. Kidd, supra, explaining Rowe v. Hill (6 C. C. A.) 215 F. 518. Following this rule the Court of Appeals of Kentucky construed "west" to be "east" in Helm v. Small, Hardin, 369; "N 40 west" to be "S 40 west" in Morriso v. Coghill, Sneed Ky. Dec. 322; and "S 35 W 27" to be "N 35 W 27" in Lewis, etc., v. Durham, 144 Ky. 704, 139 S. W. 952.

[5] There are, on the other hand, decisions of the Court of Appeals holding that the courses and distances should prevail over a line or object called for, if the line was located by protraction, or the surveyor of the line in dispute appeared to have been mistaken as to the position of the object called for. In Bosworth v. Maxwell, Hardin (Ky.) 205, the line called for had not been run, and in Ralston v. McClurg, 9 Dana (Ky.) 338, the surveyor was ignorant of the position or location of the line called for. In other cases, such as Mathews v. Pursifull (Ky.) 96 S. W. 803, Bryant v. Strunk, 151 Ky. 97, 151 S. W. 381, and Albertson v. Veneer Co., 177 Ky. 285, 197 S. W. 831, the calls were for an ideal line, or were made under the mistaken belief that the object or line existed at a point where in fact it did not exist, and in all of those cases where the surveyor made a mistake as to the location of the object, "supposing it to be at one place when in fact it was at another," the courses and distances were held to prevail.

There is nothing in this record from which it could be said that the first line of the 200-acre survey was laid down by protraction, or that either the surveyor or Spurlock, who was present as a marker when it was run, did not know where the tenth corner of the 50-acre survey was located. What we think is a more reasonable explanation of the inconsistency of the call is that the surveyor made a mistake in transcribing his notes, substituting the letter "N" for the letter "S." Among the considerations, in addition to the general rule, which moved the lower court to this view, was the similarity of the degrees and the distances of the twelfth call of the 150-acre tract with the first call of the 200-acre survey, both leading to a corner of the 50-acre survey, the only difference between the calls being that one is N 64 W 260 poles, whereas the other is S 64 W 260 poles. To this the court added the circumstance that the beginning corner of the 200-acre survey was marked as a corner, not on the northwest side, but on the southwest side, which signified, according to the proof, that the line from that corner should run southwest, and not northwest as appellant claims.

When the 200-acre tract was surveyed Wm. Spurlock was present as a marker, and he then owned the other two tracts. The inference to be drawn from these facts is against appellant's theory that the surveyor did not know where the 50-acre tract was located. As against this it is to be remembered, however, that as the tract was located it includes a part of the 50-acre survey, which was owned by Spurlock, and ordinarily one would not procure a patent to land that embraced within its boundaries a smaller tract that he already owned; hence appellant's deduction

that neither Spurlock nor the surveyor knew where the 50-acre tract was located. This circumstance was no doubt rightly appraised by the trial judge, who has had a wide experience in land litigation in Kentucky, and who remarked that he had rarely found a survey made after 1840 that did not cover a prior one. Moreover, if the survey were located as appellant claims that it should be, it would include a larger acreage of the 150-acre tract than it includes of the 50-acre tract under the location fixed below.

The full discussion by the lower court of the considerations which led it to read the first call S 64 W 260 poles, instead of N 64 W 260 poles, and to vary or extend some of the courses and distances in fixing the other lines of the boundary, convinces us of the correctness of the conclusions reached. In fact, the principles upon which the later lines were determined seem not to be disputed and are not relevant, further than they bear upon the correctness of the first line as fixed. We find nothing in the record tending to show that the first line was an ideal line, or that it was laid down under a mistaken belief as to the whereabouts of the 50-acre survey. The circumstances, we think, support the opposite inference, and for that reason we are constrained to hold that the location made below was right.

The judgment is affirmed.