CASE 40.—ACTION BETWEEN FELIX G. MORGAN AND OTHERS AND C. G. RENFRO INVOLVING THE LOCATION OF A TRACT OF LAND IN CON-TROVERSY.—January 16.

## Morgan and Others v. Renfro

Appeal from Leslie Circuit Court.

H. C. FAULKNER, Circuit Judge.

From the judgment plaintiffs appeal. Reversed.

1. Boundaries—Description—Water Courses.—The mouth of the second right-hand fork of a stream called for in a survey is a natural, indestructable monument, which will prevail over courses and distances if any must yield.

Morgan and Others v. Renfro.

2.  Same—Stake as Corner—Presumption—Performance of Official
    Duty—County Surveyor.—It will be presumed that the county
    surveyor when he designates a corner of a survey as being
    at a stake, actually placed one at the point indicated, in
    compliance with Rev. Stats., 1852, c. 102, section 3, sub-sec.
    2, requiring the county surveyor in locating and surveying
    entries to bound them by plainly marked trees, stones, or
    stakes.

3.  Boundaries—Description—Survey—Courses and Distances.—
    Where corners marking three successive lines of a survey
    are lost, the distances of the three lines will be altered pro-
    portionately to make them conform to the known parts of
    the boundary rather than to radically alter the course of one
    of the lines.

4.  Same—Point in Known Survey.—Where a survey calls for
    a point in the line of a known survey, a corner of which is
    the nearest point in the line to the last call of the survey
    in question, the corner should be accepted as the point
    intended.

LEWIS & CALVERT, attorneys for appellants.

ROBERT L. BLAKEMAN of counsel.

### CONTENTIONS—AUTHORITIES.

Where one or more corners of a survey are lost, they must be
located by running the lines from the nearest known and estab-
lished corners until they intersect. The point of intersection will
be the corner desired.

(a)  Adjudicated cases in point:  (Beckley v. Bryan, et al.,
Sneed, 91-96; Wishart v. Cosby, 1 A. K. M., 382.)

(b)  Case not in point but touching matters referred to in
argument:  (Pearson v. Baker, et al., 4 Dana, 321.)

(c)  Case referred to but not cited for authority:  (Bryan v.
Beckley, Litt, Sel. Cases, 91 et seq.)

J. M. BICKNELL, attorney for appellee.

Appellee takes the following statements to be law:

1.  A stake corner is mathematically known, and is not lost.

2.  Unless controlled by another known corner, a stake corner
is to be located by running the calls of the patent.

3.  A lost corner cannot be found by reversing from an assumed
stake corner.

4.   Every grant should be construed with as few sacrifices as possible.

5.   One line of a survey is of itself of no higher dignity than any other line.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR—Reversing.

The question for decision on this appeal is the correct location of a line of a survey of 100 acres of land made by Chastain & Waggoner in Clay county (now Leslie), March 13, 1870, on which a patent was issued to them. The controversy arises upon a conflict between this patent and one issued in 1884 to F. G. Morgan. Under the statute, the junior patent, to the extent of the conflict, is void. The question for decision is one of law, as there is no controverted fact in the case before us. To a clear understanding of the point decided, and of the contentions presented, we append a map of the two patents, and another necessary to be located. The John Gilbert, Sr., patent, dated August 9, 1831, is located because the Chastain & Waggoner patent calls for some of its lines. Furthermore, the presumption is that patentees of vacant land make their entries and surveys with reference to elder surveys which are known. The Gilbert patent is located by actual survey so far at least as is material to a correct application of the rules of construction to the patents in dispute. Both sides agree to this fact.

Morgan and Others v. Renfro.

The F. G. Morgan patent, No. 39,601, is also located correctly. There is no material discrepancy between the surveys of it made by competent and expert surveyors for the respective parties in this litigation. The trouble arises in correctly locating the lines and corners of the Chastain & Waggoner patent. It has but two natural, visible monuments. One is its beginning corner (A on the map), which is as called for in the patent, and actually located on the ground, 2 white oaks and a double poplar, on Salt Well Branch (waters of the Middle Fork of the Kentucky river), and a small holly near a path leading up the branch, which is also a corner to a 50-acre survey made for Timothy Pennington. The first call of the Chastain & Waggoner patent is N. 52 degrees W., 80 poles, to a stake at the mouth of the second right hand fork of Salt Well Branch (B on the map). The mouth of the

second right-hand fork of Salt Well branch is a natural, indestructible monument, and must, under familiar rules, prevail over course and distance if any must yield. Running the course called for, the natural object is not reached. It required 96 poles upon that same course to reach the mouth of the branch. Thus the second corner is established. The third call is N. 15 degrees W., 300 poles, to a stake (C on the map). Fourth call is N. 75 degrees E., 300 poles, to a stake (D on the map). The fifth call, which is the crucial point in the case, is thence S. 65 degrees E., 160 poles, to a stake in the line of John Gilbert, Sr., survey. To obey the patent call here would carry the line to point E on the map, some 140 poles N. E. of the nearest point on the John Gilbert, Sr., survey. The next call in the patent (the sixth), is "thence with said line S. 25 degrees W., 600 poles, to a stake in his line;" thence N. 60 degrees W., 360 poles, to the beginning. As the sixth call is for the John Gilbert, Sr., line, the course in the Chastain & Waggoner patent will yield to the course of the Gilbert line, and will follow it, whatever its course to the nearest point, agreeable to the distance called for, that will afford a practical closing of the last line with the beginning corner. Thus we see that the controlling objects in the Chastain & Waggoner patent are (1) its beginning corner; (2) its second corner; and (3) the line of the John Gilbert, Sr., patent. That line is definitely and satisfactorily located. The problem is to reconcile all the calls and lines in the Chastain & Waggoner patent so as that none of the natural objects and known monuments may be sacrificed. To do this, it is necessary to discard some of the other calls, in part. One known corner and one established line of a patent is of as much dignity and value as any other. Appellee contends, and the circuit court decided, that the second

and third calls of the patent should be established as called for (C and D on the map), and that the fourth call must be sacrificed in both its course and distance so far as may be necessary to reach the nearest point in the nearest line of the John Gilbert, Sr., survey (D to 7 on the map). This point, from whatever construction may be adopted, is the seventh corner of the John Gilbert, Sr., patent. The circuit court, therefore, changed the course and distance in this call from S. 65 degrees E., 160 poles, to S. 10 degrees E., 178 poles; the latter course and distance bringing the line to a point, and the nearest point, in the John Gilbert, Sr., survey.

The object of definite calls and monuments in a survey made of public lands is at least twofold: One to locate to the settler or patentee the specific boundary which he acquires, the other to notify the public; those who might desire to locate vacant lands in the the vicinity for entry and survey, and those who might investigate the records to ascertain the extent of such boundaries as had been previously located and patented with the view of purchasing them. It is believed that with very insignificant exceptions there remain no vacant lands in this commonwealth, though there probably was much that was vacant, or supposed to be, in 1870, and for some years later. Nevertheless. the importance and basis of the reason for marking such original patent boundaries remains the same in other respects. There are many thousands of acres of unenclosed lands, wood land, yet in this commonwealth. Though it may all have been long since patented, there was never a time when the preservation of the original lines, and the certainty of the evidence of their location was more important. Not only is the validity of the particular patent involved therein, but as other patents which may call for their

lines, or whether they do or not, must yield to them
when junior in date, the existence of the original cor-
ners is a matter of public as well as private concern.
The statute required the county surveyor in locating
and surveying entries, to bound them "by plainly
marked trees, stones, or stakes, noting where it binds
on a water course, or the marked lines of another sur-
vey, giving names." Subsection 2, section 3, c. 102,
Rev. Stat., 1852. It will be presumed that the county
surveyor, a public official, has performed his duty in
that respect, and that when he designates a corner
as being at a stake, some such object was actually
placed at the point indicated. Such temporary objects,
though placed as required, could not long endure,
and will in short time become lost. So, for that
matter, marked trees may be destroyed, and such cor-
ners be lost. In all such cases, where it comes to
locate again the survey so made, the object is to repro-
duce if possible, or as near as may be, what was
originally done in appropriating the land by the sur-
vey. If any corner is identified from it, where
the patent calls are definite as to courses and
distances, it is certain that the survey may be repro-
duced. There are several means which may be
adopted. The rule is to prefer the best evidence.
Therefore marked corners—i. e., those clearly identi-
fied, and which are notorious objects—are seized upon
as the most satisfactory; then natural objects not
marked, such as a stream, a ridge, a cliff, or the like,
for they, while not so exact, are nevertheless reason-
ably sure to afford satisfactory evidence of the loca-
tion of the patent at or near that point; then calls for
the lines of other patents, which are of record, and
which are susceptible of definite and certain location;
then courses; and then distances, in the order named.
Nor are these all; for the object is by such circum-

stantial evidence to get at what was done before, and
by rules so certain and unvarying that any subsequent
inquirer, at any time, may reach the same conclusion
with ordinary diligence.   Hence it is allowed to con-
sult the record of the original survey and plat, and, if
there appear an error in the patent, such record may
be resorted to to correct it.    Steele v. Taylor, 3 A. K.
Marsh. 226, 13 Am. Dec. 151; Bruce v. Taylor, 2 J. J.
Marsh. 160; Harris v. Lavin, 6 Ky. Law Rep. 304;
Hagins v. Whitaker, 42 S. W. 751, 19 Ky. Law Rep.
1050; Goff v. Lowe, 80 S. W. 219, 25 Ky. Law Rep.
2176.   The number of acres to be embraced in the
patent is also an evidence to be consulted.   For, while
a patent is not void, that actually contains more than
it calls for, the fact that it calls for a certain number
of acres, and there is a clear mistake in some of its
calls, to be corrected by the evidences obtainable on
the ground and in the face of the papers, the doubt
may be removed in favor of a particular theory when
to do so satisfies or approaches closer to the state-
ment of the patent as to the quantity of land embraced
by it.   Applying these rules to the case in hand, we
find that the water courses called for, and the marked
timber, as well as the line of the John Gilbert, Sr.,
survey, are ascertained and located.   The other cor-
ners, all stakes, are not found; and, by running those
lines according to the calls of the patent, they cannot
be located so as to close the patent boundary.   They
are then lost corners.   In locating them under the
rules laid down above, something must be sacrificed.
Three lines and two corners are involved in that sacri-
fice.   Where shall it be?   We have said that one corner
is not of more importance than another.   Nor is one
line of more importance than another.   As the rule
is to sacrifice distances as being the least important,

it would not do to discard any course so long as by altering distances only the survey can be made to close, leaving all identified corners intact.    It was therefore, error to alter the call of the patent as to its course, as, by shortening the distances of the doubtful lines in equal proportions, all the courses would be maintained.    This precise method was directed in the case of Beckley v. Bryan, (Ky.) Dec., 91, where it was said: "If the lines and corners of all surveys could be shown, the true meridian and the variations of the magnetic needle from it would be of no importance in adjusting claims to lands.    Considerable aid may also be derived from the distances called for in plats and certificates of surveys, yet, when a departure from either course or distance becomes necessary, reason as well as the law seem to suggest that the distances, taken in our mode of mensuration, ought to yield, as being much the most uncertain of the two.    *    *    * From one of the adjacent corners which remain, the courses and distances of the lost lines ought to be run, as called for in the plat and certificate of survey, and if they close with the other adjacent corner which remains, the true situations of the lost cor- ners, and consequently the true situation of the lost lines, will be satisfactorily ascertained. But, if the courses and distances thus run do not close the survey, it must be accom- plished by running the same courses, and either lengthening or shortening the distances, as each case may require, and in proportion to the length of each line, as called for in the plat and certificate of the survey.    And, if the survey cannot be made to close by this means, then, and not otherwise, a devia- tion from the courses called for must also aid in accomplishing the purpose.

The rule of stare decisis applies with especial force

to such an opinion; for it must be presumed that within the century since it was delivered, many surveys have been made, and grants issued, and titles confirmed under its authority. It has become verily a part of the practical construction of many thousands of grants and conveyances. Furthermore, the rule is perfectly sound. Applying it, then, to the case in hand, it was the proper construction of the patent in dispute (Chastain & Waggoner) to have maintained the courses of the three lost lines, but have shortened the lines in proportion, so as to fix the lost corners at the points of their intersection. This result is attained as the nearest approximation to the patent calls which the situation affords, including quantity of land embraced. We see that the original surveyor was in error in transcribing the calls of his survey; and, as it is conclusively presumed that the error was not in the marked corners, nor in the natural objects called for, nor in the line of a previous survey of record called for, it must have been in some of the lines where there is no evidence on the ground, or in the face of the record then made, of the location. The presumption is as reasonable that it was in one line as in another, and, as it is impossible to now say in which it occurred, each is reduced proportionally till a closed boundary is effected; that being a necessary result and object of the work in the field.

Not only is the John Gilbert, Sr., survey, as located by the civil engineers who run out the disputed boundaries in this case, agreed to be the one called for in the Chastain & Waggoner patent; but as there is no evidence of any other survey by that name in that neighborhood, and particularly none that corresponds so nearly as this one with the patent calls, it is properly assumed that it is the one called for. Markham v. McGee, Hardin, 382; Marshall v. McDaniel, 12

Bush, 381. It is true that the Chastain & Waggoner patent does not call for a corner of the Gilbert survey; but a corner may be a point in a line, and, if it is the nearest point in the line to the last call of the patent designating it as an object or abutment, that may be, and should be, accepted as the point intended. From the foregoing it follows that the Chastain & Waggoner boundary is the lines A, B, F, G, 7, 8, 9, 10, 11, and that the lap of this survey upon the F. G. Morgan patent designated by the area embraced in lines Y, 7, g, and f, is the only land in dispute between these litigants. The disputed area so designated should be adjudged to appellee. The remainder of the tract in controversy claimed by appellee, being all the land northeast of the line, e, Y, 7, should be adjudged to appellants.

Judgment reversed, and cause remanded for entry of a judgment in conformity herewith.