## Albertson, et al. v. Chicago Veneer Company.

(Decided October 19, 1917.)

### Appeal from Wayne Circuit Court.

1. Boundaries—Location of Patent—Courses and Distances.—The rule to the effect, that in locating a patent, calls for marked corners, natural objects, and established lines, as constituting the boundaries of the tract of land described in the patent, must prevail over the courses and distances, which describe the lines of the patent, does not apply when the call for a marked corner, natural object, or established line at a place, was made under a mistaken belief that such object was at such place, when in fact it did not exist at the place, where the surveyor believed that it did.

2. Boundaries—Location of Patent.—When the boundaries of a patent are not fixed by marked corners, natural objects, nor established lines, the plat of the original survey is potent evidence of the true location of the boundaries. ,

J. N. SHARP and DUNCAN & BELL for appellants.

J. P. HARRISON, J. BERTRAM & SON, O. H. WADDLE & SONS and WILLIAM WADDLE for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellant, W. H. Albertson, instituted this action against the appellee, Chicago Veneer Company, claiming to be the owner of certain lands from which the appellee, as alleged, had cut and appropriated, to its own use, timber trees of the value of more than forty thousand dollars. The ownership of the land by appellant, from which the trees were cut, was denied by the appellee. Thereafter, the appellants, Davidson, Hicks & Green Company, claiming that they were joint owners of the land with the appellant, Albertson, intervened by a petition to be made parties, and they were ordered to be made parties plaintiff, and the action prosecuted by all the appellants as having a joint interest in the lands. The appellant, Albertson, claimed title under a survey made in the name of John T. Redman and Nathaniel Merideth for two hundred acres of land, survey having been made on January 17, 1857, and a grant thereafter made to John T. Redman for the land. The appellants, Davidson, Hicks & Green Company, claimed an interest in the land as vendees of Albertson. The appellee claimed title to the land under grants to P. W. Hardin between 1870 and 1873, and hence, the only question to be

determined in the case, is, whether the grant, under which Albertson claims, embraced the land from which the timber trees were cut and removed. The appellant, Albertson, showed a chain of title from the Commonwealth to himself, through a patent to John T. Redman, granted in 1858, and a conveyance to himself from Redman. In the year, 1903, it seems, that Albertson undertook to sell this tract of land, together with a great deal of other lands owned by him, in that vicinity, to the vendors of his co-appellants, Davidson, Hicks & Green Company, and evidently thought that he had disposed of all the lands that he had in that community, at that time. Reference will be made to the accompanying rough diagram to illustrate the questions and facts in the case. The grant under which Albertson claims, so far as it is necessary for the purposes of this opinion, describes the land as "beginning at a white oak and two Spanish oaks, about 120 poles S. E. from where the said Redman now lives, near his corner about the head of a spring; thence S. 25 W. 36 poles to a black oak and dogwood; S. 10 W. 25 poles to a hickory and white oak; S. 75 E. 80 poles to a stake on Thomas Upchurch's line, and with the same S. 8½ W. 400 poles to a stake on Emsley Bertram's line, and with the same N. 56 W. 480 poles to a stake on said Redman's line of a 120 acre survey, and with the lines thereof N. 56 poles to two beeches; N. 35 E. 62 poles to a beech and maple, etc." The description then calls to follow the lines of Redman's 120 acre survey to the beginning corner, a white oak and two Spanish oaks, in each instance giving course and distance. There is no controversy as to the location of the Thomas Upchurch tract of land, and its location is shown on the accompanying diagram by the tract designated as lying east of the line described by the figures and letter, 5, 4, 6, 7 and y. Neither is there any controversy as to the correctness of the location of the line from 5, by way of 4, 6, 7 and y, as the western boundary line of the Upchurch tract. The location of the John T. Redman 120-acre tract survey is, also, conceded, and that the line described by the letters aa, c, b, k, l, m, n, o, p, q, r, s, t, u, v, w, and x, is the boundary line of that survey, which adjoins the land embraced by the patent under which the appellants claim title. It is, likewise, agreed, that the corner designated by the figure 1, a white oak and two Spanish oaks, is the correct location of the beginning corner of the Redman 200 acre tract of land,

under which the appellants claim title. It is, also, conceded, that the line from 1 to 2, 2 to 3, and 3 to 4, is the correct location of the first three lines of the survey. The controversy arises with regard to the proper length of the fourth line of the patent and the location of the fifth line of the patent. The appellants claim, that as they could not find any survey in the name of Emsley Bertram, at the end of 400 poles, running with the Upchurch line from 4 to 6, that line should be extended to 7, a distance of 75 or 80 poles, further, and from figure 7, a new line, not called for in the patent, should be inserted, which is the line from 7 to d, and which is about one and one-quarter miles in length, in order to enable them to reach a tract of land, which was patented in

the name of Emsley Bertram, and then to follow the lines
of the Bertram tract from "d" to "e" and from "e"
to "h," and then from "h" to "b," a stake on a line
of the John T. Redman 120 acre tract, or else the line
should be run from "d" to "e," and from "e" to "cc,"
from thence to "f," thence to "bb," and thence to the
stake at "b." The appellee, upon the other hand, insists
that the proper location of the Redman 200 acre patent
is to run from 4, with the line of the Upchurch tract,
the distance called for in the patent, 400 poles, which
would be at the figure 6, a blazed gum, and from thence
with the course and distance called for in the patent,
which is N. 56 W. 480 poles to "b," a stake in the line
of the Redman 120 acre tract, and thence with the lines
of that survey to the beginning. The location of the
lines of the tract of land, in controversy, by locating its
southern boundary with the line from 6 to "b," causes
the patent, which only calls for 200 acres of land, to
embrace about 700 acres, while locating the lines as in-
sisted upon by the appellants, would cause the patent
to embrace about 400 acres more, or in all about 1,100
acres. The original plat made and reported by the
county surveyor, when the land was originally surveyed
for a patent in 1857, is in the record, and the figure
of the tract of land, as described by the surveyor, who
made the survey, is substantially the same figure as the
lands embraced by the figures and letters, 1, 2, 3, 4, 5,
6, b, k, l, m, n, o, p, q, r, s, t, u, v, w and x. It is very
evident that the original survey was not actually made
upon the ground, other than the lines from 1 to 2, 2 to
3, and probably 3 to 4, and that all the other lines were
simply made by protraction. While the fourth line of
the patent is a call to run from figure 4, a stake in
Upchurch's line, with the Upchurch line to Emsley Ber-
tram's line, 400 poles, the nearest point, at which thus
running, the surveyor would be to the Emsley Bertram
50 acre tract, would be one and one-quarter miles, and
the further the line should be continued with the Up-
church line the greater the distance would exist between
it and the Emsley Bertram 50 acre tract of land. To
reach the Emsley Bertram 50 acre tract of land from the
point where the 400 pole line called for in the patent
terminates on the Upchurch line, the 400 pole line is ex-
tended over 70 poles, and then a new line is inserted in
the survey, not called for in the patent, with a radically

different course from the Upchurch line, and 320 poles
in length, and to connect the survey then at the stake
called for in the patent on the John T. Redman 120 acre
survey, following the Bertram line from "d" to "e,"
and "e" to "h," and from "h" to "b," would necessi-
tate the putting into the survey of three other lines,
which are not known to the patent, either as to course or
distance, and the latter one of which would be at least
one mile in length, and the other two lines would be 52
poles and 106 poles, respectively, in length, and if the
Bertram line bounding the 100 acre tract and 50 acre
tract was followed, it would necessitate the putting into
the patent of six lines, which are not called for in the pat-
ent, in place of the patent line of N. 56 W. 480 poles to
a stake in the line of the 120 acre Redman tract. It is
furthermore observable that the addition of the line from
7 to d is absolutely arbitrary, as there would be no more
reason, under the calls of the patent, and in accordance
with the theory of appellants, for running this line from
7 to d than there would be for extending a line and in-
serting it from 6 to f. The proof for appellants shows,
that at the end of a line, which is called for in the pat-
ent as S. 8½ W. 400 poles, with the Upchurch line from
4 on the Upchurch line, terminates at a blazed gum, at
the point designated by the figure 6, and to run the suc-
ceeding line according to the courses and distances called
for in the patent, N. 56 W. 480 poles, would be a line
from 6 to b, the latter place being a point in the line of
the John T. Redman 120 acre survey, and that the length
of that line is substantially the same as the length of the
line described in the patent. In 1903, when appellant,
Albertson, made a sale and conveyance of his lands, in
that vicinity, to the vendors of appellants, Davidson,
Hicks & Green Company, and caused a survey to be made
of the lands, which he conveyed to them, in locating the
lines of the 200 acre Redman patent, the southern line
of it was located as running from 6 to 8, and thence to
9, a and to b, and this line was at that time marked.
There is no explanation of why the triangular piece of
land, shown on the diagam as the Abbott place, was in-
cluded in his conveyance, but presumably he had ac-
quired title to that at the time. The fact that he caused
the line to be so run as to include the small triangular
tract of 8, 9, a, and, also, conveyed to the same vendee
the Bertram 50 acre survey of which he had become
the owner, conduces strongly to prove that he was not

then claiming any of the lands now in controversy. The vendor of the Davidson, Hicks & Green Company conveyed to it the same boundary of land, which Albertson, by his deed in 1903, conveyed. For some reason the Davidson, Hicks & Green Company conceived the idea that the Redman 200 acre patent embraced the boundary of land included by the lines 6 to 7, 7 to d, d to e, e to h, and h to b, and thence back to 6, and it thereupon entered into an agreement with appellant, Albertson, which provided that he would institute suit against the appellee for damages for cutting and removing the timber trees from the boundary of land, and, as a consideration for his so doing, it would pay the cost of the litigation and Albertson's expenses in returning from Missouri to attend the trial, and in the event he made a recovery, it would pay to him the sum of eight hundred dollars, and he would assign to it the judgment he recovered.

The cutting of the trees sued for, stood upon the land, which lies to the south of the line from 6 to b, and is included in the lands shown upon the diagram by the lines from 6 to 7, 7 to d, d to e, e to f, f to bb, bb to b, respectively.

At the conclusion of all the evidence in the case the court directed a verdict for the appellee, and from this judgment the appellants have appealed.

Hence, the only question for determination is the correctness of the ruling of the trial judge in ordering a verdict for the appellee. The determination of the proper location of the fifth line of the patent was a determination of the entire controversy, and as there was no conflict in the evidence pertaining to the location of the patent, it was the province of the court to determine its location. Bryant v. Strunk, 151 Ky. 97; Ky. Coal & T. Dev. Co. v. Carroll H. W. Co., 154 Ky. 523; Preston Heirs v. Bomar, 2 Bibb 493, and no complaint is made of the court so doing, except the correctness of the ruling.

The fourth line of the patent is described as a line, which runs with Upchurch's line "S. 8½ W. 400 poles to a stake on Emsley Bertram's line." The only meaning to be attached to this call is, when taken literally, that running from figure 4, with the Upchurch line for the distance of 400 poles, at that point, the line would reach a line of some survey or tract of land owned or claimed by Emsley Bertram. Following Upchurch's line, as indicated, however, it appears that the nearest

point at which Upchurch's line comes to any tract of land owned by Emsley Bertram, at that time, is one and one-quarter miles. If, by following the Upchurch line from the corner at the figure 4, a line of Emsley Bertram would be reached, which was an established line, it would be justifiable to extend the line beyond the 400 poles called for, to the distance necessary to reach the line called for, but if the extension of the line, beyond the 400 poles called for, would not, in any event, reach a line of Emsley Bertram's, it seems that the reason and purpose for its .extension must necessarily fail. The fifth line described in the patent is a line, which is to run with Emsley Bertram's line N. 56 W. 480 poles to a stake on Redman's line of a 120 acre survey. The meaning of this taken literally is, that the line run, as thus described, would terminate at a stake on the 120 acre survey, at a point 56 poles south of two beeches, and which is said to be the point designated by the letter b, and would run with a line of Emsley Bertram from 6 to b, and Bertram's line intersected the Redman 200 acre survey, at that point, when in fact it was a mile away.

It is apparent that it is a physical impossibility to run the line called for in the patent and as. described as to course and distance, which could be done by reversing it and running from the letter, b, S. 56 E. 480 poles, to locate it at any point other than a straight line from 6 to b. Instead of this line, however, the appellants propose to extend the fourth line, from the termination of its distance at 6, to 7, a distance of 70 odd poles, which, as shown, is not justified, because by such extension the object called for in the patent is not and cannot be reached, and then the line from 7 to d, the exact course of which the evidence does not show, but which is radically different from the course of the fifth line called for in the patent, and is one and one-quarter miles in length. This is done, it is said, for the purpose of reaching the nearest point to any line of Emsley Bertram, and while the calls in the patent indicate that the line to be run with Emsley Bertram's line has a course of N. 56 and a length of 480 poles, and terminates at the point b, six lines are inserted into the survey to take its place, the fifth one of which terminates at a distance of about one mile from the point b, at which the fifth line in the patent shall terminate, and to close the survey it is then necessary to add a line of nearly a mile in length, which is the line from bb to b. This results in

making a figure of the survey radically different from the original plat returned by the county surveyor when the plat was made, and nearly doubling the quantity of land which the survey contains, and nearly six times the quantity called for in the survey, and the addition of six lines not described in the patent and which are not necessary to be inserted in the survey to cause it to close in accordance with the calls of the patent and the original plat. It will further be observed that there are no marks on the line from 7 to d, or on the line from bb to b, which could in anywise indicate that such lines had ever been surveyed or run. It is impossible to believe, that the surveyor, when originally surveying the land for the patent, extended his line from 6 to 7, or ran the lines from 7 to d, d to e, e to h, or from e to f, f to bb, or bb to b, and then by mistake or oversight left them all out of his plat and left out any descriptions of them, and it is furthermore impossible to believe that he intended to include them in the survey. From the fact that the line, N. 56 W. 480 poles to a stake in the line of Redman's 120 acre survey, will run practically from the figure 6 to b, it is highly reasonable to conclude that the surveyor actually ran this line, and by mistake described it as running with a line of Emsley Bertram, thinking that such was a fact, when in fact it was not. If the surveyor did not actually run the line from 4 to 6 and 6 to b, but merely laid them down by protraction, which really seems to be the truth of the matter from all the facts and circumstances proven, we conclude that he simply described the end of the 400 pole line as terminating in a line of Bertram's, under the mistaken belief that Bertram's line was at that point, when in fact it was not. It is not to be presumed that the surveyor knowingly made a description for the lands, which it is impossible to run out, according to any recognized rules of surveying. It is true, that the well-established doctrine is to the effect, that, as a general rule, when there is a conflict between courses and distances and recognized objects, which are called for as establishing the boundary lines of a survey, the courses and distances must yield, and natural objects and established boundaries of other tracts called for and designated known points therein, must be accepted as the true boundary of the land, and lines actually run and marked by the surveyor control the fixing of the boundary. If a prior survey is called for in a patent, as its boundary, and the lines of the

prior survey are established lines, then they control the boundary lines of the subsequent survey, which calls for them. Jones v. Hamilton, 137 Ky. 256; Wallace v. Maxwell, 1 J. J. M. 457; Baxter v. Evett's Lessee, 7 T. B. M. 329; Ewing's Heirs v. Savary, 3 Bibb 236; Bruce v. Taylor, 2 J. J. M. 160; Trustees, etc., v. Wagnon, 2 A. K. M. 379; Bruce v. Morgan, 1 B. M. 26; Pittman v. Nunnelly, 32 S. W. 606; Brockman v. Rose, 28 R. 673; Morgan v. Rhenfro, 30 R. 553; Alexander v. Hill, 108 S. W. 225; Rock Property Co. v. Hill, 162 Ky. 324; Brashears v. Joseph, 108 S. W. 337. One of the reasons for this rule is, that a mistake might creep into the description of the survey, as to course or distance, and the survey is the line where the surveyor actually ran regardless of any improper description. In the last named opinion the following rule was laid down to be followed in ascertaining the boundary of a tract of land:

"That in determining boundaries marked corners are the most satisfactory evidence; then natural objects, such as streams, ridges and cliffs; then calls for the lines of other patents, which are of record and susceptible of definite location; then courses, and lastly, distances."

The foregoing rules, however, have for their prime purpose the ascertainment of the true boundaries of lands and are not designed to be used for the purpose of imposing boundaries, other than the real ones, and the rule that courses and distances must yield to natural objects and established boundary lines, in fixing the boundaries of lands, does not apply, when it is evident that the call for a natural object, or an established boundary line, was made, under the mistaken belief, that it existed at the point, where the surveyor reported it to be, when in fact the natural object and boundary line was not at that point. Bryant v. Strunk, 151 Ky. 97. This exception to the general rule has a peculiar potency, when, as was said in Ralston v. McClurg, 8 Dana 338, "where the purpose is not to ascertain the position of lines and corners once actually run and established, but to construct a survey by making two lines never run—these lines should be fixed where the surveyor would have made them, if he had run them out." Mercer v. Bates, 4 J. J. M. 334. The fact that there was evidence tending to show that Emsley Bertram, at one time, had a line in the neighborhood of the figure 6, and the line from 6 to b, and which evidence was uncontradicted, is not over-

looked, but we have not thought necessary to rely upon it in this opinion, as it was not entirely satisfactory. The conclusion is reached, that the call for the termination of the fourth line at a stake in Emsley Bertram's line, and the call for the fifth line to run from thence with Bertram's line, to the point at b, was a mistake on the part of the surveyor and the patentee of the land, and when this conclusion is reached there can be no doubt as to the correctness of the location of the fifth line, from 6 to b, as the point b is established by the distance, which it is to the south from the next corner in the Redman 120 acre survey, which the patent fixes at 56 poles, and then in accordance with the rule above stated, the call in the patent controls the length of the fourth line. These conclusions are very strongly sustained by the original plat. In Mercer v. Bates, *supra,* it was said:

"The original plat is not only admissible as evidence, but it is intrinsically one of the most potent facts which can be adduced, and hence it has often been admitted by the court as always either preponderating or alone conclusive."

This doctrine is sustained by the principles of the following cases: Patrick v. Spradling, 19 R. 1038; Bell County Land Co. v. Hendrickson, 24 R. 371; Hogg v. Lash, 120 Ky. 419; Daniels v. New Era Land Co., 137 Ky. 535; Bryant v. Strunk, 151 Ky. 97; New Era Land Co. v. Childs, 161 Ky. 588; Brashears v. Joseph, 32 R. 1137. The original plat is potent evidence of the real boundary where there is an absence of other facts in the way of marked lines, natural objects and established boundaries called for. In Baxter v. Evett's Lessee, *supra,* it was said:

"In locating a patent the inquiry first is for the demarcations of boundary, natural or artificial, alluded to by the surveyor. If these can be found extant, or if not now existing, can yet be proved to have existed and their locality can be ascertained, these are to govern. The courses and distances specified in a plat and certificate of survey are designed to describe the boundaries as actually run and made by the surveyor, and to assist in preserving the evidence of their local position, to aid in tracing them whilst visible, and in establishing their former position in cases of destruction by time, accident or fraud. As guides for these purposes, the courses and

distances named in a plat and certificate of survey are useful.''

In the instant case, when the facts indicate that the call for the Emsley Bertram line was a mistake, the original plat becomes potent as evidence of the real boundary of the survey, as well as evidence of the mistake made in calling for the Emsley Bertram line. A copy of the original plat is here included.

It is therefore ordered that the judgment be affirmed.