ROWE et al. v. KIDD et al.

(Circuit Court of Appeals, Sixth Circuit.   January 10, 1919.)

No. 3072.

1. JUDGMENT ⨺654—SUIT TO REMOVE CLOUD ON TITLE—DISMISSAL ON MERITS —IMPLIED HOLDING OF POSSESSION.

Dismissal on the merits of a bill to remove cloud from title must be taken as an implied holding that plaintiffs' possession, essential to maintenance of the bill, had been sufficiently made out; as otherwise dismissal should be for want of possession, without prejudice.

2. QUIETING TITLE ⨺12(1)—NECESSITY OF POSSESSION.

Under the federal equity practice, as well as under Act Ky. July 3, 1893 (Ky. St. § 11), bill to remove cloud or to quiet title cannot be maintained without proof of possession.

3. QUIETING TITLE ⨺12(7)—ACTUAL POSSESSION—HOW SHOWN.

Under the Kentucky rule, to constitute actual possession of land one need not have a crop on it or a person living in a house, but, if he has an inclosure on it, such possession may be shown by any acts indicating his intention to hold exclusive possession of it.

4. QUIETING TITLE ⨺12(7)—ACTUAL POSSESSION—SUFFICIENCY OF SHOWING.

Plaintiffs at time of filing bill to remove cloud on title must, for the purpose of maintaining suit, be deemed to have been in actual possession of all the land within their inclosure, which was intact, though their tenant had left a few months before, after gathering his crop, and they had put no new tenant in possession; they not having affirmatively indicated intention to abandon possession, the time elapsing since the former tenant had left not warranting a presumption of abandonment, and they in their bill asserting possession.

5. QUIETING TITLE ⨺12(7)—POSSESSION, ACTUAL AND CONSTRUCTIVE.

In the absence of conflicting possession, actual possession by plaintiff in suit to remove cloud of part of the land in controversy under their deed, with claim of title to the extent of its boundaries, operates as constructive possession of the remainder; the two being sufficient for maintenance of the bill.

6. JUDGMENT ⨺675(1)—PERSONS CONCLUDED—ESTOPPEL—ASSUMING DEFENSE.

One is not estopped by judgment by assuming defense of the suit, his action in that regard not being open and known to plaintiff.

7. JUDGMENT ⨺675(2)—PERSONS CONCLUDED—ESTOPPEL—UNAUTHORIZED ANSWER.

R., grantee by unrecorded deed from A., was not estopped by judgment for plaintiff in action against A. to quiet title with warning order against R., resident of another state, though A.'s attorney without authority and unknown to R. filed answer in name of R. as well as A.; the general attorneys of R. having objected and been assured answer in R.'s name would be withdrawn, though not having seen to the carrying out of the promise, which was not done.

8. BOUNDARIES ⨺3(3)—CALLS—COURSE AND DISTANCE—EXTENDED NATURAL OBJECT.

Departure from courses and distances required to yield to a call for an extended natural object should not be greater than is reasonably necessary, and, the distance called for being exhausted, a slight and immaterial variation from the prescribed course, whereby the nearest point in the natural object can be reached, should be made, rather than to follow the course precisely and reach the natural object at a much greater distance.

9. BOUNDARIES ⬤⟿37(3)—RELOCATION—EVIDENCE.
    Under evidence in suit to remove cloud from title, *held*, that a surveyor's location of the patent, under which defendants claimed, carried out, generally, the intent of the original surveyor, the cardinal object of inquiry.

10. QUIETING TITLE ⬤⟿10(2)—SHOWING OWNERSHIP.
    Under the Kentucky statutes, plaintiff in bill to quiet title to succeed must prove ownership in himself; any weakness of defendant's title not being enough.

Appeal from the District Court of the United States for the Eastern District of Kentucky; Andrew M. J. Cochran, Judge.

Suit by I. W. Rowe and another against Pinkie Kidd and others. Bill dismissed (249 Fed. 882), and plaintiffs appeal. Affirmed.

J. B. Snyder and H. C. Gillis, both of Williamsburg, Ky., for appellants.

Wm. Waddle, of Somerset, Ky., for appellees.

Before KNAPPEN and DENISON, Circuit Judges, and SANFORD, District Judge.

SANFORD, District Judge. This suit, which was before us at an earlier stage sub nom. Rowe v. Hill (215 Fed. 518, 132 C. C. A. 30), was brought by the plaintiffs, I. W. Rowe and wife, citizens of West Virginia, by a bill in equity against citizens of Kentucky, of whom Pinkie Kidd, hereinafter called the defendant, is the real party in interest, to remove an adverse claim as a cloud upon the plaintiffs' title to a tract of land in Wayne county, Ky., of the requisite jurisdictional value.

The plaintiffs claim title under various patents issued to one Alexander between 1880 and 1885. The defendant claims under a patent issued to one Mills in 1858, which, being senior to the Alexander patents, is admittedly superior thereto in so far as it may be properly located within their boundaries. By a previous judgment of the circuit court of Wayne county, Ky., affirmed by the Court of Appeals of Kentucky (Alexander v. Hill, 108 S. W. 225, 32 Ky. Law Rep. 1148), and relied on by the defendant as a bar to the present suit, the location and extent of the Mills patent was adjudged in accordance with the defendant's present contention.

The court below, after a hearing on pleadings and proof, being of opinion that the plaintiffs were estopped from denying the location of the Mills patent as adjudged in said former suit, and that in any event it would not be justified in deciding the matter differently from the state courts, dismissed the plaintiffs' bill. Rowe v. Hill (D. C.) 196 Fed. 910.

On appeal to this court we held, however, that the plaintiffs were not bound by the judgment in said former suit or estopped from contesting the location and boundaries of the Mills patent as therein determined; and that the record, which contained evidence not in said former suit, did not bring the case within the rules of law announced therein or justify us in locating the Mills patent as therein adjudged. Having, however, doubt whether the plaintiffs had shown the pos-

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

session of the land in controversy essential to the maintenance of a bill to remove cloud from title, and without undertaking to determine the true location of the Mills patent under the confused and unsatisfactory evidence in the record, we reversed the decree dismissing the plaintiffs' bill, and remanded the case for further proceedings, with the direction to the court below to reopen the case for further proof, not only as to the question of the plaintiffs' possession and title, but also as to the location and extent of the Mills patent, the judgment in the former suit, and all other issues in the case. 215 Fed. at pages 522, 524, 526, 132 C. C. A. 30.

The case was again heard in the court below, partly upon evidence introduced at the former hearing, including depositions in the former suit, and partly upon additional testimony orally given. Upon this hearing, the court below held that, in accordance with the rules stated in the opinion of this court, the plaintiffs were not estopped by the judgment in the former suit as to the location of the Mills patent, but that nevertheless the decision of the Court of Appeals of Kentucky therein should be accepted as prima facie correct and followed unless error was clearly made to appear; and, concluding after a comprehensive view of the evidence and analysis of the authorities, that no error appeared in its location of the Mills patent, again entered a decree dismissing the plaintiffs' bill, with costs. Rowe v. Kidd (D. C.) 249 Fed. 882. From this decree the plaintiffs have again appealed to this court.

[1, 2] 1. *Plaintiffs' Possession.*—Although at the last hearing below the attention of the court was directed to this question by the defendants' motion to dismiss the bill upon the ground that the plaintiffs had shown no possession of the land in controversy, this was not referred to in the opinion of the court or any specific ruling made thereon. The dismissal of the bill upon the merits must, however, we think, be taken as an implied holding that the plaintiffs' possession had been sufficiently made out, since otherwise the bill should have been dismissed for want of such possession, without prejudice. It is well settled, as we formerly stated, that under the federal equity practice, as well as under the Kentucky Act of July 3, 1893 (Ky. St. § 11), a bill in equity to remove cloud from plaintiffs' title, or, as it appears to be called in the Kentucky practice, a bill to quiet title, will not lie where the plaintiff is not in possession of the premises, and cannot be maintained without proof both of possession and legal title. 215 Fed. at page 524, 132 C. C. A. 30, and cases cited. Much additional proof was taken on the last hearing in reference to the plaintiffs' possession. While in some respects conflicting and obscure, it nevertheless, in our opinion, sufficiently establishes the following facts. About seven years before the commencement of the plaintiffs' suit, Alexander, their vendor, made and fenced in for occupation by tenants a house and clearing, containing about five acres, and lying within one of his patents covering part of the land in controversy. The house and greater part of this clearing were outside of the Mills patent, as claimed by the defendant; but the fence and a portion of the actual clearing, including a substantial part of an acre, extended within its

boundaries. The deed from Alexander to the plaintiffs, dated in 1903, united the Alexander patent, on which this clearing lay, with other contiguous patents, in one tract, described by outer boundaries. The plaintiffs, after their purchase from Alexander, continued to keep up this house and clearing by tenants placed thereon for the purpose of holding possession. Their last tenant apparently left it in the fall of 1907, after gathering his crop. They commenced this suit in January, 1908. At that time a new tenant had not been put in possession, and the house was then unoccupied and the clearing uncultivated. The fence was, however, still standing; and there is no evidence that they intended to abandon the possession. Some time in the spring of 1908, the fence burned, leaving no inclosure; and since that time the house has not been occupied or the clearing cultivated.

[3-5] Under the Kentucky rule in order to constitute the actual possession of land, it is not necessary that one should have a crop upon it or a person living in a house; but, if he has an inclosure upon it, such possession may be shown by any acts indicating an intention on his part to hold exclusive possession of it. Everidge v. Martin, 164 Ky. 497, 503, 175 S. W. 1004, and cases therein cited. At the time the plaintiffs' suit was commenced, while they had placed no new tenant in possession, their inclosure still remained intact; they had not affirmatively indicated an intention to abandon their possession and sufficient time had not elapsed since the former tenancy to warrant a presumption of such abandonment; and, on the contrary, they asserted possession of the premises in the averments of their bill. Under these circumstances, regardless of whether under the authority of the Kentucky cases it would be necessary, in order to establish the defense of adverse possession, to show, after the expiration of the former tenancy, acts indicating affirmatively an intention to continue the possession, we conclude that, at least for the purpose of maintaining their suit, they must be deemed to have been in actual possession at the time their bill was filed of all that portion of the land claimed by the defendant which lay within their inclosure.

On the other hand, the defendant has failed to show, by the greater weight of the proof, that any part of the land in controversy was then in her actual possession. While the testimony as to this matter is likewise obscure and conflicting, we conclude that the house then in her possession, and on which she relies, was not inside of the Mills patent claimed by her, but stood, as definitely located by the plaintiffs' witness Blakeman, a skilled and accurate surveyor, by running the course and distance from the beginning corner, outside of that patent and upon another tract of land.

In the absence, therefore, of any conflicting possession by the defendant, the plaintiffs' actual possession of part of the land in controversy under their deed from Alexander, with claim of title to the extent of its boundaries, operated constructively as a possession of the whole tract. Everidge v. Martin, 164 Ky. at page 502, 175 S. W. 1004; Taylor v. Lumber Co. (Ky.) 109 S. W. 348, 349. And see Parsons v. Dills, 159 Ky. 471, 475, 167 S. W. 415. However, under a statute similar to that in Kentucky, a bill to quiet title may be main-

tained upon an actual possession of part of the land in controversy and constructive possession of the remainder, if vacant and unoccupied. Roberts v. Northern Pacific Co., 158 U. S. 1, 30, 15 Sup. Ct. 756, 39 L. Ed. 873. The plaintiffs must therefore be held to have shown, under all the circumstances, such possession of the land in controversy, actual and constructive, as was necessary to maintain their bill.

[6, 7] 2. *Estoppel.*—The court below correctly held that under the rules stated in our former opinion (Rowe v. Hill, 215 Fed. at page 521, 132 C. C. A. 30) the plaintiffs were not estopped from contesting the location and boundaries of the Mills patent as adjudged in the former suit in the state court to which they were not parties. In addition to the authorities cited in our former opinion on the point that the plaintiffs were not bound by such former judgment even if Alexander had made defense to the suit both for himself and them in pursuance of an understanding and agreement with them, since his action in that regard was, in any event, not open and known to the other party, and the estoppel by reason of assuming the defense of a suit must, as in other cases, be mutual, see also, to the same effect: Bigelow v. Copper Co., 225 U. S. 111, 126, 32 Sup. Ct. 641, 56 L. Ed. 1009, Ann. Cas. 1913E, 875, and Helm v. Zarecor (D. C.) 213 Fed. 648, 654; and, by implication, Souffront v. La Compagnie Des Sucreries, 217 U. S. 475, 487, 30 Sup. Ct. 608, 54 L. Ed. 846, and Cushman v. Paving Co. (7th Cir.) 220 Fed. 857, 860, 135 C. C. A. 289. The case presented is entirely different from that in Re Dashiell (6th Cir.) 246 Fed. 366, 158 C. C. A. 430, in which it was held that one who caused litigation to be instituted through another, intentionally and actively submitting his interest to the consideration of the court and inviting its decision thereon, is estopped to question such decision as against the party whom he induced to institute the litigation. Nor does the evidence on the second hearing confirm our former suspicion that the plaintiffs might perhaps have participated in the defense of the former suit, either by Alexander or by attorney, by and under the answer filed therein in the name of "J. W. Rowe," thereby misleading the present defendant, the plaintiff in the former suit, as to the identity of the purchaser from Alexander, and in consequence becoming estopped from denying their identity with "J. W. Rowe" and bound by the judgment rendered in such suit as if they had actually been parties. Rowe v. Hill, 215 Fed. at page 521, 132 C. C. A. 30. While the proof shows that I. W. Rowe, and probably Hannah Rowe, knew generally of the pendency of the former suit, it does not show that they authorized Alexander or any one else to make defense for them in the name of "J. W. Rowe," or otherwise, or that they knew that an answer had been filed in such name. And on the contrary it affirmatively shows that this answer was filed by Alexander's attorneys, merely on the presumption that he was authorized to file a joint answer, and that when the attorneys who represented the plaintiffs generally in their land matters, but who had not been employed in this particular suit, discovered that such answer had been filed they stated to Alexander's attorneys that they would have nothing to do with de-

fending the suit and requested that this answer be withdrawn and were assured that this would be done; upon which assurance they relied. It is clear that, in the absence of any action taken either by the plaintiffs or their attorneys to mislead the present defendant in the former suit, the mere fact that such attorneys did not follow up the matter and see that the answer filed in the name of "J. W. Rowe" was actually withdrawn, in accordance with the assurance given them by Alexander's attorneys, did not work an estoppel against the plaintiffs binding them by the judgment rendered in the former suit.

[8] 3. *Location of the Mills Patent.*—The question of the location and boundaries of the Mills patent has presented great difficulty. The survey was made and patent issued in 1858. Both described the tract as containing 100 acres. The description in the survey, which is substantially followed in the patent, is as follows:

"Being and lying in the county of Wayne on the waters of the Big South fork and bounded as follows, to wit: Beginning at a poplar; running S. 55 E. 200 poles to a stake at the river cliff; N. 40 E. 40 poles to a stake; N. 50 W. 200 poles to a stake; N. 21 E. 40 poles to a stake; N. 20 W. 60 poles to a stake at the river cliff; S. 80 poles to a stake; N. 70 W. 10 poles to a stake; S. 45 W. 20 poles to a stake at the river cliff; N. 10 E. 60 poles to a stake on Thomas Ryan's line; thence with said line N. 85 W. 60 poles to a stake on said line; S. 71 W. 40 poles to a stake on Isaac Foster line; S. 33 E. 150 poles to J. W. Mills' corner a pine; thence with Mills' old line to the beginning."

The Kentucky Court of Appeals adopted as the true location of this patent that established by one Stanfill, a surveyor; and the map filed by him was made the basis of the judgment of the court. This location has been again adopted by the court below. According to this location the patent contains about 700 acres. In the former suit the Kentucky Court of Appeals, having first found that the beginning corner had been correctly located by Stanfill and that the Thomas Ryan, Isaac Foster, J. W. Mills corner, and Mills old line were "well-known and established" at the time of the Mills survey in 1858, thereupon held that the courses of the patent should be changed and the distances extended so as to reach the river cliffs and such lines and corner, under the "well-settled" law that "where there is a conflict between the course and distance and recognized objects establishing the boundary lines of a survey, course and distance must yield and the natural objects and established boundaries of other tracts called for, and designated known points therein must be accepted as the true boundary of the land in question." Alexander v. Hill, 108 S. W. at page 228, 32 Ky. Law Rep. at page 1150. This rule was subsequently approved and followed in Rock Creek v. Hill, 162 Ky. 324, 327, 172 S. W. 671, and recognized as an established general rule in Albertson v. Veneer Co., 177 Ky. 285, 299, 197 S. W. 831. On the former appeal we were of opinion that while, in so far as the principle of law on which this decision was based had become a rule of property in Kentucky, it should be followed by this court, if applicable to the facts then in evidence, we were not then justified in locating the boundaries of the patent in accordance therewith for the reason that the evidence then before us, which was not the same as that formerly before the state

courts, did not show that either the Ryan, Foster, or old Mills line or the J. W. Mills corner were "well known and established" in 1858 when the Mills patent was surveyed. Rowe v. Hill, 215 Fed. at page 523, 132 C. C. A. 30. We were further of opinion that the evidence then before us did not bring the case within the rule stated in Morgan v. Renfro, 124 Ky. 314, 99 S. W. 311, and Brashears v. Joseph, 108 S. W. 307, 310, 32 Ky. Law Rep. 1139, 1143, that, in locating a patent, "calls for the lines of other patents which are of record and which are susceptible of definite and certain location" are to be preferred to course and distance; a rule which was also subsequently approved and followed in Rock Creek Co. v. Hill, 162 Ky. at page 327, 172 S. W. 671, and recognized as an established general rule in Albertson v. Veneer Co., 177 Ky. 293, 197 S. W. 831. In the record formerly before us, there was no copy of either the survey or patent of the Ryan or Foster tracts and no proof of any recorded survey or patent of the tract which the defendant claimed to have identified as the old J. W. Mills tract. Rowe v. Hill, 215 Fed. at page 524, 132 C. C. A. 30.

On the last hearing, however, the defendant introduced in evidence a copy of a patent issued to Thomas Ryan in 1857, which was admitted to have been correctly located by Stanfill, and which was sufficiently identified by the proof as the Ryan tract whose line was called for in the Mills patent; also, a copy of the patent issued to Isaac Foster in 1855, which was likewise admitted to have been correctly located by Stanfill; also, a copy of a survey made by Robert Parmley in 1849 upon which a patent issued in 1851, which was owned by Mills at the time of his survey in 1858, which contained a "three pines" corner that has been definitely located and sufficiently identified by the proof as the J. W. Mills "pine" corner called for in the Mills patent, and a line of which is sufficiently identified as the "Mills old line" likewise called for in the Mills patent. It furthermore now appears from the opinion of the court below that it has never been disputed in this case, but always frankly conceded, that the lines of the Thomas Ryan and Isaac Foster survey were "well known and established" when the Mills survey was made, and that it was because of this that no pains were taken on the former hearing to introduce the certificates of survey and patents in evidence. Rowe v. Kidd, 249 Fed. at page 889.

The additional evidence thus offered by the defendant on the last hearing, and the concessions thus made, obviously go far to supply the deficiencies in the record in the former case and make applicable to the facts now before us, as a controlling principle, the rule of law stated by the Kentucky Court of Appeals in the former suit; and being reluctant to differ from that tribunal in a decision affecting the title to real estate within the borders of the state, unless necessarily constrained thereto, and also having in mind the weight attaching to the opinion of the learned trial judge in the court below, who heard the oral testimony of the witnesses upon most of the crucial matters in controversy, we find no sufficient reason now justifying us in reaching a different conclusion on the merits from that concurrently reached by the Kentucky Court of Appeals and the court below. It is true

that Stanfill's map, which was made the basis of the judgment of the Kentucky Court of Appeals, is inartificially prepared, showing neither the points of the compass, courses nor distances, and that it incorrectly indicates in places the location of the river and river cliff, especially in the neighborhood of the Ryan tract, where both are shown much further to the west than they are actually located. However, we find none of its omissions or inaccuracies to be fatal to the substantial correctness of its location of the Mills patent as adopted by the courts.

In view of the elaborate consideration given in the opinion of the court below to the various objections urged against the correctness of Stanfill's location, we do not deem it necessary to set out at length the reasons leading us to our present conclusion, involving in the main a consideration of detailed facts appearing in the opinion of the court below; and shall refer merely to some of the more important matters. Stanfill's location of the poplar beginning corner we again find to be supported by the greater weight of the evidence. Rowe v. Hill, 215 Fed. at page 522, 132 C. C. A. 30. We also find that he correctly located the "stake at the river cliff," at the end of the first line of the patent, at the point at which he placed a stone corner. That this corner is on the river cliff is shown not only by the testimony of Stanfill and other witnesses for the defendant, but is also in our opinion established by the facts stated in the testimony of the plaintiffs' witness Blakeman, in whose accuracy we have confidence, as well as by his map, from which it appears that it is located on the main river cliff at the apex of an inward bend which it makes from its usual course parallel with the river bank. And while this corner is 410 poles from the poplar beginning corner, instead of 200 poles, as called for in the patent, it is the nearest point in the river cliff which can be reached in the general course south 55 east from the beginning corner. It is true that, if this line were run with due allowance for the intermediate variation of the magnetic needle from the true meridian (Bryan v. Beckley, 16 Ky. Litt. Sel. Cas. 91, 93, 95, 12 Am. Dec. 276), it would pass about 125 feet southwest of the stone corner established by Stanfill, and, by reason of the deflection in the line of the cliff, it further extended in the same direction, would reach the cliff at a point 585 poles from the beginning corner. We are of opinion, however, that in such case, where the course and distance must yield to the call for an extended natural object, the departure from course and distance should not be greater than is reasonably necessary, and that where, after the distance called for is exhausted, the nearest point in such natural object can be reached by a slight and immaterial variation from the prescribed course, such deflection should be made so as to reach the nearest point in such natural object, rather than to follow the course precisely and reach the natural object at a much greater distance. See, by analogy, Morgan v. Renfro, 124 Ky. at page 324, 99 S. W. 311, as to reaching the nearest point in the line of a known survey. We further find that Stanfill correctly stopped the third line of the patent at the end of the 200 poles called for, instead of extending it a total distance of 410 poles so as to correspond to the extension that

had been made in the first line. Assuming that the rule stated in Cornett v. Coal Co., 175 Ky. 718, 727, 195 S. W. 149, and other cases, that a known error in an established line may be offset by a corresponding change in the opposite line, so as to close the survey, would otherwise apply where, as in the present case, the supposed "opposite" line varies in its course five degrees from the first line, it nevertheless, in our opinion, cannot be properly applied here for the conclusive reason that to extend the third line to a total distance of 410 poles would not aid in closing the survey, but would lead further away from the river cliffs and the Ryan tract called for in the subsequent lines and make it impossible to close the survey in reasonable conformity thereto. And while it is true that the cliffs located by Stanfill at the end of the fifth and eighth lines are not, in our judgment the main river cliffs, which, under the great weight of the proof, lie a mile or more to the east of these points, they are nevertheless cliffs branching out from the main river cliffs and running up the tributary creeks, and a subsidiary part of the general system of river cliffs which may well have been called river cliffs at that time and so designated by the surveyor.

[9] Without referring further to the details of Stanfill's location of the Mills patent, we are of opinion that it carries out, generally speaking, the intent of the original surveyor, which is the cardinal object of inquiry. Kentucky Lands Co. v. Development Co. (6th Cir.) 219 Fed. 45, 55, 133 C. C. A. 151, and cases cited. And see Mineral Development Co. v. Lands Co. (6th Cir.) 259 Fed. 118, —— C. C. A. ——, October 10, 1918. It begins on the poplar corner called for, and extends on the southeast to the river cliffs, on the east to the Ryan tract, on the north to the Foster tract, and on the west to the old J. W. Mills tract, and includes, as was apparently intended, the main body of the unoccupied land then lying between these natural objects and various tracts. And while under this location the patent includes about 700 instead of 100 acres, such discrepancy in acreage is merely one of the evidences of intention, and was not regarded by the Kentucky Court of Appeals as a sufficient objection to Stanfill's location. On the whole, we now conclude that this location is in substantial accord, not merely with the conclusion reached by the Kentucky Court of Appeals in Hill v. Alexander, which is of paramount weight in our consideration of the case, but also with the opinion in Rock Creek Co. v. Hill, 162 Ky., supra, in which a patent calling for 150 acres was located so as to include 500 or 600 acres; and that the court below was justified in locating the Mills patent in accordance with these cases. We are not unmindful of the fact that in Bryant v. Strunk, 151 Ky. 97, 101, 151 S. W. 381, and Albertson v. Veneer Co., 177 Ky. at page 293, 197 S. W. 831, it was held that when the lines of a survey were evidently not actually run but simply laid down by the surveyor by protraction, as in the present case, the general rule that courses and distances must yield to natural objects and established boundary lines does not apply when it is evident that the call for such objects and lines was made by the surveyor under the mistaken belief that they existed at certain points when in fact they were not at such points, and that in

such case the original plat made by the surveyor is potent evidence in determining the location of the tract intended to be patented. The plat accompanying the Mills survey does not appear to have been actually introduced in evidence on the hearing below and is not in the record before us. The Kentucky Court of Appeals stated in its opinion in the former suit that Stanfill's location carried out in the main the distinguishing features of this plat. 108 S. W. at page 228, 32 Ky. Law Rep. 1150. The court below, to whom the plat appears to have been at least exhibited, states merely that Stanfill's location departs radically from the plat at its northwestern end. 249 Fed. at page 888. Blakeman in his testimony stated that the original plat was the same as a plat made by him by plotting the courses and distances given in the survey. This being so, it would appear that the original plat, which was evidently made in this manner and not by an actual location of the lines upon the ground, corresponds, in its general outlines, otherwise than as to acreage, with the location shown in Stanfill's map, except, as stated by the court below, in its northwestern end. On the whole, therefore, we conclude that we are not justified, on this account merely, in departing from the location of the patent established by the Kentucky Court of Appeals in the former suit.

It is true that in some of the details of Stanfill's location, especially after passing the third line, there may be minor inaccuracies. However, it does not appear from the proof that such inaccuracies, if any, are prejudicial to the plaintiffs; nor have they in their evidence furnished sufficient details as to the precise location of the various objects called for, to enable such inaccuracies, if any, to be corrected, and a more accurate location made; having, as pointed out by the court below, contented themselves in the main merely with criticisms of the location as made by Stanfill. 249 Fed. at page 907. We hence find no prejudicial error in the decree of the court below so far as the same involved the location of the Mills patent in accordance with the judgment of the Kentucky Court of Appeals in the former suit.

[10] 4. *Mesne Conveyances.*—In various mesne conveyances in the chain of title from the patentee Mills to the defendant calls are omitted from the descriptions in the patent, so changing the boundaries that if these conveyances are located in accordance with their exact descriptions, the defendant has deraigned title to only part of the land contained in the original patent. We need not determine whether these mesne conveyances should be corrected so as to supply the omitted calls and convey all of the land included in the patent, for the reason that, even if not so corrected, the result is that the title to all portions of the patent not included in the chain of mesne conveyances will be now outstanding in the defendant's vendors. This would authorize the dismissal of the plaintiff's bill as well as proof of title in the defendant, since under the Kentucky statutes the plaintiff in a bill to quiet title as in an action of ejectment, to be entitled to a recovery, must prove ownership himself. Patton v. Stewart, 173 Ky. 220, 223, 190 S. W. 1062. And for the same reason, it is immaterial whether, as the plaintiffs insist, the deed to the defendant is void for champerty,

in whole or in part, by reason of adverse possession by the plaintiffs or their vendor.

5. The decree of the court below dismissing the plaintiffs' bill, with costs, will hence be affirmed. The plaintiffs will pay the costs of the appeal.