## Young, et al. v. Runyon, et al.

(Decided March 9, 1926.)

Appeal from Pike Circuit Court.

1.  Boundaries—General Rule as to Variation of Needle Cannot be Relied on, where Lost Corner would Thereby be Located at a Distance from River Whereon it was Described in Deed.—Where location of corners on either side of a lost corner was agreed on, but description in deed required lost corner to be located on a river, the general rule as to variations of the needle, which would locate lost corner about 30 poles from river, cannot be relied on.

2.  Boundaries—Evidence Held to Support Judgment Locating Lost Corner as Claimed by Defendant.—In action involving location of a lost corner in accordance with defendant's claims held supported by the evidence.

MOORE & CHILDERS for appellant.

ROSCOE VANOVER for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Affirming.

Appellants and appellees own adjoining tracts of land. A single line divides them. The line is fixed by the title papers in appellant's chain of title, as those in appellee's chain of title call for the line of the former. The line in dispute is the first line of the tract owned by appellants, and it is described: "Beginning at a white oak and hickory on the south side of the ridge, S. 10 W. 124 poles to a bunch of sycamores on the bank of the Sandy river." The parties agree on the location of the "white oak and hickory," the beginning corner, but disagree as to the location of the "bunch of sycamores" on

the river. The next line, that running from the bunch of sycamores on Sandy river, as described in the deeds fixing the above as the dividing line between the two farms, is: "S. 37 E. 60 poles up the river and crossing it to a buckeye by a Spanish oak and sugar tree." The parties agree on the location of the "buckeye by a Spanish oak and sugar tree," to which that line runs. With the location of the corners on either side of the lost corner agreed upon, it would seem a simple task to locate the lost corner. Run the first line from its beginning corner, reverse the second from its ending corner, having due regard for the variation of the magnetic from the true meridian, and the intersection of the two lines will locate the lost corner. The result obtained by the application of that rule can not be taken as the answer in this instance, however, because the intersection of the two lines so run is approximately 30 poles from Sandy river, while the corner to be located in accordance with the description given in the deeds must be located on the river. That fact makes it impossible to rely wholly upon the general rule as to the variation of the needle and run the first line from its agreed beginning corner to the river in accordance with that general rule and locate the corner on the river at the point where that line strikes it. The first line is entitled to no more weight than the second. Reverse the second line from its agreed ending corner with the same variation of the needle, which appellant insists should be used on the first, and the line will not end at but approximately 30 poles from the river. So it appears the general rule as to the variation of the needle may not be relied upon.

As the engineer and surveyor, who upon the ground undertook to retrace the steps of the original surveyor who located the line and the corner in dispute, testified to and by his map illustrated the controversy between the parties for appellants, the line from the agreed hickory and white oak corner to the river and the lost corner on the river may properly be located only when the line is run south 14 degrees and 36 minutes west as located by appellants, while the same line as located by appellees is run south 13 west. In other words, there is a difference of one degree and 36 minutes in the variation of the needle as he runs the line according to the contention of the two parties. Assuming the line to have been first projected on the ground in 1830, he testified that a line then located by running S. 10 W. could be retraced now

only by running south 14 degrees and 36 minutes west, the difference being the correct variation of the needle in the meanwhile for the locality where this land lies. The S. 10 W. line, however, seems to be one of the lines of yet older title papers originating in a survey made in 1798, and the theory seems to be established that at that time and until about 1820 the magnetic meridian varied from the true to a constantly increasing difference in exactly the opposite direction from that since about 1824. Undertaking to locate the line with due regard to the rule as to the variation of the needle for that locality, all those things necessarily would have to be taken into account. But as shown above the rule as to variation of the needle is shown to be at fault here since by it the lines will not intersect at the river.

The chancellor adjudged the location of the line contended for by appellees, defendants below, to be correct. That location is supported by the evidence that many marked line trees stand in the line so run. It is further supported in that its distance coincides with the distance called for, also by the fact that from the corner on the river so located to the next corner, the location of which is not questioned, the distance coincides with that called for. Nothing found in the evidence is sufficient to upset these facts supporting the judgment of the chancellor, when all the facts are considered in the light of the rules of law for locating lines and corners of surveys, fully and clearly written by this court in Morgan v. Renfro, 124 Ky. 314.

The judgment, therefore, will be affirmed.